No. 33,516

MABEL ELLIOTT, *Appellee,* v. ED BEHNER, *Appellant.*

(73 P. 2d 1116)

 Opin-
ion filed December 11, 1937. 

*J. A. Brady,* of Cherryvale, for the appellant.

*W. N. Banks, O. L. O'Brien* and *W. L. McVey,* all of Independence, for the appellee.

The opinion of the court was delivered by

ALLEN, J.: This was an action brought by Mabel Elliott against Ed Behner for recovery of damages because of the negligence of defendant, resulting in the death of Albert Elliott, husband of the plaintiff. The plaintiff recovered judgment, and defendant appeals.

Plaintiff's husband and the defendant were working for Montgomery county on bridge work. The bridge crew was working under the direction of the county engineer. The county transported the men from the county garage in Independence to and from their work, and had done so for a number of years. The defendant, Ed Behner, was the driver in charge of the truck used in the transportation of the bridge crew at the time of the accident. He had been in charge of the truck as driver for several years. Defendant lived in Cherryvale, Kan., and received no extra pay for driving the truck, except that in this way he received transportation back and forth from his home.

On the day of the accident the crew had been working on a bridge north of Coffeyville. They were on the return trip to Independence when the collision occurred which resulted in the death of Elliott. The truck in which the men were riding at the time was an ordinary Ford truck. The defendant, Behner, was driving and the bridge foreman was riding with him in the cab. The rear part of the truck in which the crew was riding was wider than the cab. The defendant, Behner, testified that "The compartment the men were riding in was a little wider than the cab—I would judge fourteen inches. There was a seat on each side and one crossways with men's backs just behind the cab; there were curtains on the sides of the compartment." The curtains prevented the men from seeing outside except through the back end. Elliott was seated in the corner of the truck facing the rear.

The truck was traveling in a westerly direction on U. S. highway No. 160. This highway, after running due west, makes a sweeping curve to the south. Just west of the center of this curve a byroad runs to the west. At the point of intersection of this byroad with the main highway, a truck owned by one Lawrence was parked,

with a jack under the left rear wheel. Lawrence testified that he had a load of mixed lumber on his truck—about a ton of lumber that he had taken from a house that he had torn down. He stated that "the wheels of his truck were clear of the paved part, possibly some of the lumber might have extended over the highway." Other witnesses stated the Lawrence truck was parked at an angle and that the lumber extended back over the pavement.

The collision occurred about five o'clock p. m. It was daylight—a clear day, and the sun was shining. There was evidence that there was a red flag on the back end of the Lawrence truck prior to the accident. The pavement at the point of collision was twenty feet wide, and the shoulders six feet wide. The defendant, Behner, testified:

"We were coming in from work about our usual time the day of the accident at our usual rate of speed. The boss, Mr. Guilkey, was riding with me and we made some remark about the sun shining, and I said that I could see in front of the truck and down the road. I saw the truck in front was at the side of the pavement when I was one hundred yards from it. After we approached nearer I saw the truck was stopped; before that I thought it was moving. The next thing I saw was just at the time my boss hollered and I swerved to clear the compartment, but could not get it clear enough, but I went as far as possible. There was some lumber sticking out. I was possibly thirty feet from the lumber when I saw the pieces sticking out over the paved road. It stuck about seven feet on the pavement from the end of the truck. There was no signals or any kind of flagging on the lumber. I am positive there was just one piece of the lumber that stuck out of the truck. I was able to miss all of the rest. I had got the front wheels of the truck I was driving across the center line across to the left when we struck the piece of board, and I had gotten over on the left side of the road; the truck I was driving did not in any way come in contact with the truck parked; just came in contact with the one piece of lumber; the board hit the compartment the men were riding in behind the cab."

Mr. Guilkey, who was riding with the defendant, testified:

"Was riding in the cab of the county truck at the time of the accident. It was about five o'clock in the afternoon, he was observing the road at the time he approached the place of the accident. He looked at the speedometer and they were going twenty-two miles just before the accident. The sun was shining through the windshield. It seems as though the truck slacked up a little and it slacked down so we went around the curve. There was a little dust in the road, he said. He said to Mr. Behner, 'Can you see?' 'Yes, I can see the paving in front of the truck.' They were going perhaps twenty miles an hour at that time."

There was some evidence the windshield on the truck driven by Behner was dirty. Just as the Behner truck was about to collide

with the lumber on the Lawrence truck, it swerved to the side so that the lumber missed the cabin in which Behner was riding. A plank or piece of timber was thrust through that part of the truck where the men were riding, and struck Elliott in the back of the head, inflicting injuries from which he died.

The jury found for the plaintiff, and returned answers to special questions. From the facts found by the jury, the defendant was guilty of negligence as charged in plaintiff's petition.

It is asserted that Elliott was a guest of the defendant Behner, and as the defendant was not charged with "gross and wanton" negligence, defendant's demurrer to plaintiff's petition on the ground that the petition failed to state a cause of action should have been sustained. Our statute, commonly called the "guest statute," G. S. 1935, 8-122 b, reads as follows:

"That no person who is transported by the owner or operator of a motor vehicle, as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or damage, unless such injury, death or damage shall have resulted from the gross and wanton negligence of the operator of such motor vehicle."

Was Elliott, while riding in the truck, a "guest" of the defendant, Behner, within the meaning of the foregoing statute? The statute does not define the word "guest" as used in the statute. Perhaps it is impossible to frame an accurate definition of that term. Its meaning must be worked out from the facts of the cases as they arise. The common-law meaning of the term as given in the Restatement of Torts, section 490, *Comment a,* is as follows: "The word 'guest' is used to denote one whom the owner or possessor of a motor car or other vehicle invites or permits to ride with him as a gratuity, that is, without any financial return except such slight benefits as is customary to extend as part of the ordinary courtesies of the road."

In this case the car driven by the defendant was owned by the county, and the bridge crew was transported to and from work by the county. The defendant, Behner, neither invited nor permitted Elliott to ride on the truck. It is not stated that he had the right to select or determine who should ride, or to exclude any member of the crew. Implicit in the statute is the right of owner or operator of the car to choose his passengers.

It seems clear that where the driver receives compensation, the passenger is not a guest. While the defendant, Behner, received no extra compensation for driving the car, he did secure transportation

to and from his home in Cherryvale. This was a material compensation to him. It is not necessary the consideration pass from the passenger to the driver.

In *McGuire v. Armstrong* (1934), 268 Mich. 152, 255 N. W. 745, one who was riding with a county nurse for the purpose of having glasses fitted, although neither she nor her husband was paying for the treatment or transportation, was held not to be a "guest," the court holding that the transportation offered the deceased was accepted by her under the direction of the county, which had assumed charge of her case, and said:

"The consideration need not pass from the passenger to the driver. If the driver receives a direct benefit from another, the service is not gratuitous and there is no guest relationship. Mrs. Armstrong admitted that it was her duty as a county nurse to bring patients to various clinics in Grand Rapids. It is reasonable to infer that the transportation of such passengers as the deceased was within the course of the defendant's employment. From the testimony it seems that it was within the scope of the county's duties to provide medical services for the indigent. Transportation was furnished by the county for that purpose, and defendant, at the time of the accident, was engaged in the performance of one of the duties for which she was paid." (p. 156.)

It is next contended that the parties were engaged in a joint enterprise, and that the negligence of the defendant, Behner, will be imputed to Elliott, and thus prevent a recovery. Under the facts in this case, the parties were not engaged in a joint enterprise as defined by this court. (*Link v. Miller*, 133 Kan. 469, 300 P. 2d 1105; *Farmer v. Central Mut. Ins. Co.*, 145 Kan. 951, 67 P. 2d 511.)

But admitting that Behner and Elliott were at the time of the collision engaged in a joint enterprise, then if the action had been brought against Lawrence, the owner of the parked truck, Lawrence might have set up as a defense that Behner was guilty of contributory negligence, and that the negligence of Behner was imputed to Elliott. Again, suppose Lawrence had been injured by the negligence of Behner, then Behner and Elliott, being members of the joint enterprise, Lawrence would have had a cause of action against both. But where one member of a joint enterprise sues another, as in the case at bar, the doctrine of imputed negligence has no application. In 1 Shearman and Redfield on Negligence, 162, it is said:

"The doctrine of imputed negligence is that in certain relations there shall be visited upon the plaintiff the negligence of another concurring with that of the defendant so as to defeat the action. It is peculiar to contributory negligence and can be invoked only where the negligence of another, for which

the plaintiff is responsible besides that of the defendant, proximately contributes to the injury."

In *O'Brien v. Woldson,* 149 Wash. 192, 270 Pac. 304, 62 A. L. R. 436, it was said:

"The first question is whether the negligence of Mrs. Woldson in operating the car will be imputed to Mrs. O'Brien, the other member of the joint enterprise. Where the action is brought against a third party, the rule is that the negligence of one member of the joint enterprise within the scope of that enterprise will be imputed to the other. (*Masterson v. Leonard,* 116 Wash. 551, 200 Pac. 320; *Hurley v. Spokane,* 126 Wash. 213, 217 Pac. 1004; *Jensen v. Chicago, M. & St. P. R. Co.,* 133 Wash. 208, 233 Pac. 635.) It does not necessarily follow, however, that that rule should be applied when the action is by one member of the joint enterprise as against the other. When the action is against a third person each member of the joint enterprise is a representative of the other, and the acts of one are the acts of all if they be within the scope of the enterprise. When the action is brought by one member of the enterprise against another, there is no place to apply the doctrine of imputed negligence. To do so would be to permit one guilty of negligence to take refuge behind his own wrong. The situation when the action is brought by one member of the enterprise against the other is entirely different from that when recovery is sought against a third person." (p. 194.)

See, also, *Bloom v. Leech, Adm'r,* 120 Ohio St. 239, 116 N. E. 137; *Collins v. Anderson,* 37 Wyo. 275, 260 Pac. 1089; *Bushnell v. Bushnell,* 103 Conn. 583, 131 Atl. 432, 44 A. L. R. 785.

As the evidence was sufficient to support the verdict and special findings of the jury, and as no error is found in the record, the judgment is affirmed.