No. 39,565

BERT THOMAS, *Appellant,* v. HARRY HUGHES, a sole proprietor doing business as HUGHES SALES & SERVICE, *Appellee.*

(279 P. 2d 286)

348

Opinion filed January 22, 1955.

Tom Harley, Jr., of Wichita, argued the cause, and Tom Harley, of Wichita, and R. C. Woodward and H. P. Woodward, both of El Dorado, were with him on the briefs for the appellant.

Hugh P. Quinn, of Wichita, argued the cause, and Getto McDonald, William Tinker, Arthur W. Skaer and William Porter, all of Wichita, and O. J. Connell, Jr., of El Dorado, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: This is an action to recover for personal injuries sustained in an automobile collision.

The appeal is from an order sustaining a demurrer to the amended petition.

The sole question is whether, under the facts and circumstances disclosed by the allegations of the amended petition (hereafter referred to as the petition), plaintiff was a "guest" within the purview of G. S. 1949, 8-122b, which reads:

"That no person who is transported by the owner or operator of a motor vehicle, as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or damage, unless such injury, death or damage shall have resulted from the gross and wanton negligence of the operator of such motor vehicle."

Plaintiff concedes the petition does not charge gross and wanton negligence, but contends that as he was not a guest at the time and place in question, his allegations of ordinary negligence are sufficient to state a cause of action.

Defendant concedes the petition states a cause of action for ordinary negligence, but contends that as plaintiff was a guest, such allegations of ordinary negligence are insufficient to state a cause of action.

And so, the question is squarely presented—was plaintiff a guest, or was he not?

If he was, the demurrer was properly sustained; if he was not, it should have been overruled.

In the interest of accuracy, rather than attempt to summarize the allegations of the petition, pertinent portions thereof will be set out in full. They read:

"(2) That said defendant Harry Hughes is an individual doing business under the firm name of Hughes Sales and Service with its principal place of business being at El Dorado, Kansas; said business consisting of selling automobiles and operating a garage in connection with said business.

"(3) That at all times mentioned herein said plaintiff was the general manager of National Termite Control, Inc., a corporation organized under the laws of the State of Kansas, with its principal place of business being the city of Wichita, Kansas.

"(4) That on or about the 23rd day of May, 1952, said plaintiff as general manager of said National Termite Control, Inc., purchased for said corporation from said defendant a certain 1952 Hudson Hornet 4-door Sedan, Motor No. 162308; that in connection with said sale and as a part of the consideration thereof and as an inducement to purchase said automobile, said defendant orally agreed with said plaintiff to furnish said automobile with certain mechanical check-ups which are a regular service furnished by said defendant to the purchasers of new automobiles from said defendant.

"(5) That on or about the 6th day of June, 1952, said plaintiff drove said automobile to the place of business of said defendant, located at El Dorado, Kansas, for the purpose of having said defendant make a service check-up on said automobile as per his oral agreement. That said defendant then and there received and accepted said automobile for said purpose and directed one Lewis B. King, who at all times mentioned herein was an agent, servant and employee of said defendant and hereinafter referred to as King, to make such check-up on said automobile; that King then made such check-up on said automobile at said defendant's place of business and made certain minor adjustments; that at approximately 3:00 p. m. on said day, as part of said check-up and while acting within the scope of his employment, said King was going to take said automobile out into the country for a road test and before leaving said defendant's place of business, King requested said plaintiff to accompany him on such road test in order that said plaintiff might discover and learn for himself how such automobile performed after said check-up and minor adjustments had been made. That said plaintiff, pursuant to said request, entered said automobile, sat on the righthand side of the front seat and accompanied said King on said road test. That said trip was made for the joint benefit and advantage of said defendant and of said plaintiff, in that it was made so that the defendant might show to the plaintiff, and plaintiff might have the opportunity to ascertain, that defendant had fully complied with his contract and obligation to make the check-up and necessary adjustments to said automobile as provided for by the original contract of sale.

"(6) That said King drove said automobile south of the city of El Dorado, Kansas, on Highway 54, to what is commonly called and referred to as the airport road, which is a blacktop road running east and west and located approximately 2 miles south of the city of El Dorado, Kansas. That said King turned left on said road and proceeded east thereon a distance of approximately 2 miles to a north and south gravel road which intersected said airport road. That during the time of said road test said King drove said automobile at various speeds not exceeding 40 miles per hour until just prior to reaching the intersection of said north and south road, the exact distance being unknown

to plaintiff, then said King accelerated the speed of said automobile to approximately 90 miles per hour. That when said plaintiff observed the rate of speed that said King was driving said automobile, he started to caution said King to slow down but before he could give such warning he saw an automobile approaching said intersection on said north and south road from the north and headed south toward said intersection, said approaching automobile being driven by one Kenneth Schmidt, a resident of Butler County, Kansas; that at the time said plaintiff first observed the automobile driven by said Kenneth Schmidt, it was approximately 40 to 50 yards north of the intersection and the automobile in which plaintiff was riding was approximately 50 to 60 yards west of said intersection. That upon seeing the approach of the automobile driven by said Kenneth Schmidt, said plaintiff cried out a warning to said King; that said King attempted to stop said automobile which he was driving but was unable so to do and the automobile in which said plaintiff was riding ran into and collided with the center right side of the automobile driven by said Kenneth Schmidt.

"(7) That at the time in question, the day was clear, the surfaces of both of said roads were dry and there were no obstacles on or along the roads in question which obstructed the view of said King to interfere with or obscure a view of the automobile driven by said Kenneth Schmidt approaching said intersection; that at the time in question said airport road was an unmarked highway and there were no stop signs at said intersection.

"(8) That said road test was conducted entirely under the control, direction and management of said King as the servant, agent and employee of said defendant and at no time mentioned herein did said plaintiff have any direction or control over the operation of said automobile."

These are followed by allegations of specific acts of negligence and concerning injuries and damages sustained by plaintiff, with which, for our purposes, we are not concerned.

Since the enactment of our "guest statute" in 1931 many cases involving its interpretation and application have reached this court, as is shown by the annotations to be found following the statute number in G. S. 1949 and G. S. 1953 Supp. The same is true of other jurisdictions having similar statutes, as evidenced by 60 C. J. S., Motor Vehicles, § 399 (1) c, p. 983; 5 Am. Jur., Automobiles, § 239, p. 634 (see also p. 104, *et seq.*, of 1954 Cumulative Supplement to same volume), and extensive annotations found at 82 A. L. R. 1365; 95 A. L. R. 1180, and 10 A. L. R. 2d 1351.

In support of their respective contentions the parties cite and rely upon various principles laid down in a number of our former decisions, among them being *Stout v. Gallemore,* 138 Kan. 385, 26 P. 2d 573; *Elliott v. Behner,* 146 Kan. 827, 73 P. 2d 1116; *LeClair v. Hubert,* 152 Kan. 706, 107 P. 2d 703; *Pilcher v. Erny,* 155 Kan. 257, 124 P. 2d 461; *Vogrin v. Bigger,* 159 Kan. 271, 154 P. 2d 111;

*Srajer v. Schwartzman,* 164 Kan. 241, 188 P. 2d 971; *Sparks v. Getz,* 170 Kan. 287, 225 P. 2d 106, and *In re Estate of Wright,* 170 Kan. 600, 228 P. 2d 911.

Each has its own factual background and was decided on the basis of those facts. In none of them, however, do we find a situation even remotely similar to that in the present case.

From our analysis of the facts alleged we are of the opinion that plaintiff was not a "guest" and that the guest statute has no application.

The situation presented is one of common everyday experience. It is a matter of common knowledge that when one purchases a new automobile certain periodic mechanical "check-ups" by the seller are a part of the transaction of purchase, just as is alleged here. Plaintiff took the car which he, as general manager, had purchased for his employer, to the seller for a service check-up, pursuant to the oral agreement for the same when the car was purchased. The seller's mechanic, after making certain minor adjustments, then proceeded to do the natural thing—he wanted to "try it out." Plaintiff being present, the mechanic asked him to "go along" so that he could see for himself how the car was working after being serviced. Plaintiff got in the car and, with the mechanic driving, the two started out on the "road test."

It is alleged that the trip was made for the joint benefit and advantage of defendant (seller) and plaintiff, in that it was made so that defendant might demonstrate to plaintiff, and plaintiff would have the opportunity to see for himself, that defendant had fully complied with his contract and obligation to make the check-up and necessary adjustments to the car, as provided for by the original contract of sale.

Defendant argues there is an entire lack of consideration (payment) passing to defendant for the ride (transportation), inasmuch as the sale of the car had already been completed, and therefore no direct or tangible benefit was received by defendant as the result of his mechanic inviting plaintiff to go on the road test.

In the Srajer case, *supra,* it was held that within the meaning of the guest statute "payment" for the transportation sufficient to preclude classification of the passenger as a "guest" need not be a payment in money, but it must constitute a benefit or advantage to the owner or operator which is a substantial consideration, motivating, and not merely incidental in character.

In the Pilcher case, *supra,* this court quoted with approval from an Arkansas case to the effect that in determining who is a guest one important element is identity of the persons advantaged by the transportation, and if the transportation tends to the promotion of mutual interests of both passenger and driver, or if it is primarily for the attainment of some objective or purpose of the driver, the passenger is not a guest within the statute.

In the Vogrin case, *supra,* it was held that where the chief motivating reason for plaintiff being in defendant's automobile was not the payment of any consideration therefor, but merely on account of a desire of defendant to be accommodating and to extend to plaintiff the hospitality of the vehicle, plaintiff was a guest within the meaning of the statute.

Of the numerous decisions from other jurisdictions cited by the parties, the facts in the case of *Gage v. Chapin Motors, Inc.,* 115 Conn. 546, 162 A. 17, are most nearly like those in the one at bar. In that case the automobile owned by plaintiff developed a "shimmy" in its steering mechanism. He took it to defendant's garage to be repaired. Defendant undertook to repair it and one of its mechanics worked on the car for more than an hour. After completing the repairs, and while defendant still retained possession and control of the car, the mechanic requested plaintiff, who had remained at the garage while the work was being done, to accompany him on a "road test." The mechanic drove and an accident soon occurred, resulting in injuries to plaintiff for which he brought suit. Among other defenses, the defendant relied on the guest statute of Connecticut, which is similar to ours. The first paragraph of the syllabus reads:

"At the time of the accident, the defendant's mechanic, who had been repairing the plaintiff's car to eliminate a "shimmy," was driving the plaintiff in a road test to determine if the defect had been corrected. *Held* that the trial court could reasonably have reached the conclusion that the operation of the car arose out of a contractual relationship between the parties, was the result of and incidental to it and directed to the accomplishment of its purpose, was therefore for the mutual benefit of the plaintiff and defendant, and that the situation was not within the contemplation of the guest statute."

We think substantially the same may be said of the situation here presented. By no stretch of the imagination may it be said that plaintiff was a "guest" within the common acceptation of the term. He was not being offered the "hospitality" of the vehicle or of the defendant or its mechanic. The "transportation" was for the mutual

benefit of the parties, growing out of and incidental to the contractual relationship alleged. Its purpose clearly was to assure defendant that it had in fact performed its part of the engagement, and, further, to establish that fact in the mind of plaintiff, who had paid for such service when the car was purchased. Insofar as the facts here are concerned, we think it immaterial whether plaintiff was to pay any additional sum for the service check-up involved. Surely other considerations closely related to and affecting the "good will" of defendant's business were promoted. And, under the facts, we think it also immaterial that the mechanic probably would have made the road test anyway, in the absence of plaintiff.

Much more on the subject could be said, but limits of time and space forbid. The interested reader will find an extensive collection of cases, involving numerous situations in which "guest statutes" have been applied, or held not to apply, in the A. L. R. annotations heretofore referred to.

Our view of the matter is that the statute should not be extended beyond situations which it was enacted to remedy. A reasonable interpretation of the facts presented by the allegations of this petition leads us to the conclusion that plaintiff was not a guest. That being the case, the petition, which stated a cause of action for ordinary negligence, was sufficient to withstand the demurrer.

The ruling of the trial court is therefore reversed with directions to overrule the demurrer.

ROBB, J., not participating.