No. 41,600

DAVID J. LLOYD, *Appellant*, v. GORDON L. RUNGE and A. H. DAVIS, *Appellees*.

(348 P. 2d 594)

Opinion filed January 23, 1960.

*William L. Rees*, of Topeka, argued the cause, and *Hall Smith* and *Wright W. Crummett*, both of Topeka, were with him on the briefs for the appellant.

*Raymond Briman*, of Topeka, argued the cause, and *Lester M. Goodell*, *Margaret McGurnaghan*, *Marlin S. Casey*, *Thomas R. Sewell*, and *Gerald L. Goodell*, all of Topeka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This was an action to recover damages for personal injuries sustained as a result of an automobile collision occurring just west of the city limits of Topeka, near the intersection of West Tenth and Hope Streets, while the plaintiff was riding in an automobile, owned and driven by defendant Runge. Plaintiff appeals from the trial court's action in sustaining a demurrer to his evidence, in rending judgment against him for costs, and in overruling his motion for a new trial.

In order to clarify the situation, as it appears from the face of the record presented, it should be stated that originally plaintiff brought

the action by filing a petition in the district court wherein he sought to recover damages from Runge and A. H. Davis jointly on grounds of negligence in the operation of their respective automobiles, the latter being the owner of the other vehicle involved in the collision; and added that prior to the commencement of the trial the action against Davis was dismissed and he was later called and testified as a witness for plaintiff. From the foregoing, although the petition contains allegations relating to Davis and his negligence, the answer of Runge admits that negligence and the reply denies the allegations of a separate answer by Davis, it appears no further reference need be made to Davis and that this opinion can proceed as if the action had been commenced against Runge as the only defendant.

No appellate issue is raised respecting the pleadings. Therefore all that need be said with regard to them is that the petition charges the proximate and concurrent cause of the damages sustained by plaintiff was due to divers acts of negligence on the part of the defendant in driving his automobile in such manner as to result in the collision of the two motor vehicles involved; that the answer of defendant denies that he was guilty of negligence or gross negligence and wanton acts as alleged in the petition, denies that there was any agreement between him and any other person whereby he was to be compensated for the use of his automobile, and in general denies any acts of misconduct on his part, negligent or otherwise, which would give the plaintiff a cause of action against him or make him liable in damages for any injuries sustained by plaintiff as a result of the involved collision; and that the reply denies generally any and all allegations of new matter contained in the defendant's answer.

Upon issues joined as above stated the cause came on for trial by a jury. Thereupon plaintiff adduced his evidence and rested.

Defendant then demurred to plaintiff's evidence. Such demurrer reads:

"At this time the defendant demurs to the evidence of the plaintiff on the grounds he has failed to prove a cause of action for two reasons, three reasons: He has failed to take himself outside of the guest statute, secondly, he has failed to prove both negligence and wanton. Thirdly, that even if he has taken himself outside the guest statute he has failed to prove negligence sufficient to go to the jury."

Subsequently, after consideration of arguments on the issues raised, the trial court sustained the demurrer, discharged the jury

and rendered judgment in favor of the defendant and against plaintiff for costs. Thereafter, and following the overruling of his motion for a new trial, plaintiff perfected the appeal to which we have previously referred.

From what has been previously stated it becomes obvious the over-all issue raised by this appeal is whether the trial court erred in sustaining the demurrer to the appellant's evidence. On that account it should now be stated such issue must be disposed of in the light of the universal rule (*Messinger v. Fulton*, 173 Kan. 851, 252 P. 2d 904; *Cain v. Steely*, 173 Kan, 866, 252 P. 2d 909; *Brent v. McDonald*, 180 Kan, 142, 300 P. 2d 396; and numerous other decisions to the same effect listed in West's Kansas Digest, Appeal & Error, § 927[5], Trial, § 156 [2], [3]; Hatcher's Kansas Digest [Rev. Ed.] Appeal & Error, § 488, Trial § 149.) that in ruling on a demurrer to evidence court's do not weigh or compare contradictory testimony but must accept all evidence as true, give it the benefit of all inferences that may be drawn therefrom, and consider only such portions thereof as are favorable to the party adducing it.

Turning to the record, and applying the rule, it can be said the general factual picture essential to a disposition of the above mentioned issue may be stated in the form of the statement of facts on which, without relating all details of the testimony, appellant relies in his brief to sustain his position the ruling on the demurrer was improper. That statement reads:

"As shown by his testimony Appellant was the junior member of an Air Force tanker plane crew which was transferred to Forbes Air Force Base at Topeka, in December, 1955, and was stationed and operating here in March, 1956. This crew regularly worked together as a unit and was the 'standboard', *i. e.*, the instructor and check-out, crew for their Wing. Included in the crew was the Appellee, Master Sergeant Runge, Capt. Thomas Gorrill, and Lt. Alpha Peden. Capt. Gorrill was the senior in military rank and authority, and the plane commander. All had assigned duties. Appellant 'flew' the boom which was connected with the planes to be refueled in flight.

"Prior to March 12, 1956, this crew was notified that it would be ordered to Smoky Hill Air Force Base at Salina, Kansas, for temporary duty of a few days duration commencing March 14, 1956. The duty was to consist of a refresher course and instructions in the use of high altitude oxygen equipment. This course was required by the Air Force periodically of all similar flying personnel and was for the benefit and protection of the personnel concerned. *It was mandatory* and not optional.

"At the conclusion of a flying mission on March 12, 1956, Capt. Gorrill told his crew members, including Appellant and Appellee, to meet at the

barracks or the N. C. O. Club at 3:30 P. M. on the following day, March 13, 1956, preparatory to the trip to Smoky Hill Air Force Base.

"The crew met at the N. C. O. Club at the time stated. Appellant and Lt. Peden left the Club to go elsewhere on the base. *Capt. Gorrill and M/Sgt. Runge remained in the N. C. O. Club.* When appellant and Lt. Peden returned to the Club after 30-45 minutes Capt. Gorrill announced that they would all start for Salina. They all went directly to the barracks where the Appellee, Runge, changed his clothes. Appellant and Appellee rode from the Club to the barracks in Appellee's car and Capt. Gorrill and Lt. Peden rode together in Capt. Gorrill's car.

"Appellant does not know by whom and how it was determined that M/Sgt. Runge's car would be used to take the crew to Salina. *Nothing was said on this subject in his presence.* When appellant and appellee emerged from the barracks, Capt. Gorrill had already parked his car beside the building and the officers were at Runge's car with their effects. Capt. Gorrill told M/Sgt. Runge to go to the orderly room and get their travel orders. All four got in Runge's car and he drove to the orderly room. Here the Captain ordered Appellant to go in and get the orders.

"Appellant went into the Orderly Room and asked for the travel orders for the group. When the office personnel could not locate the travel orders for this group, the squadron Operations Officer, *Major Caskey, told Appellant to tell Capt. Gorrill that their written orders could not be located and to proceed to Smoky Hill Air Force Base without them.*

"Appellant delivered this order to Capt. Gorrill and Capt. Gorrill said 'Get in the car and let's go.'

"Capt. Gorrill was carrying the individual ground training records of the crew members and retained them in his custody at all times.

"The party left the Base in M/Sgt. Runge's car. As they were proceeding through Topeka on West 10th Street, Runge started driving in a fast and reckless manner and continued to do so although Appellant remonstrated with him. Near the intersection of West 10th Street and Hope Street, Appellee Runge was driving 60 miles an hour, at dusk, in a 30 mile zone. At the intersection he came upon an eastbound car attempting to make a left turn and drove into and collided with this car (the Davis car) without applying his brakes or turning aside.

"The Runge car then skidded 89 feet across the road and into a ditch and ran head on into a concrete culvert. Appellant was seriously injured in this crash and after about 1 year of hospitalization and treatment was discharged from the Air Force for injuries received in this collision. They were determined to be 'injuries received in the line of duty.'

"Written travel orders covering the intended travel of this group to Smoky Hill Air Force Base were in fact issued at sometime which was never established but Appellant never saw the orders nor learned of their existence and contents until sometime after the date of his injury, and there is no contention that any other members of the party on March 13, 1956 had received the orders, had seen them, or knew what the orders provided. A copy of the orders was admitted as Defendant's Exhibit 2 [on cross-examination] over Appellant's objections.

"While appellant was hospitalized at Forbes Air Force Base, *in bed traction and under sedation,* he signed a statement prepared by some one representing the Appellee. This statement is in evidence [also on cross-examination] as Defendant's Exhibit 3." (All emphasis supplied by appellant.)

From contentions advanced by both parties, both in oral argument and in their briefs, it is apparent the principal question in controversy with respect to the ruling sustaining the demurrer is whether under facts, conditions and circumstances disclosed by the evidence, giving it the benefit of all inferences to which it is entitled under the rule to which we have heretofore referred, appellant was a guest within the meaning of the guest statute (G. S. 1949, 8-122b), as construed by our decisions.

The statute in question reads:

"That no person who is transported by the owner or operator of a motor vehicle, as his guest without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or damage, unless such injury, death or damage shall have resulted from the gross and wanton negligence of the operator of such motor vehicle."

In approaching a decision of the foregoing question it must be admitted, as the parties concede, that our reports disclose no cases where we have been called upon to decide the precise question here presented on the basis of identical facts. Indeed, after an extended examination of all the decisions dealing with the subject, it can be said we have failed to find, and the parties do not cite, any case with facts, conditions and circumstances of such character that it can be properly classified as a controlling precedent in this jurisdiction or elsewhere.

Thus, particularly since this court has long recognized that in general the determination of the question whether a person is or is not a "guest" within the meaning of the statute depends largely upon the facts, and circumstances of the particular case (See, *e. g., Bedenbender v. Walls,* 177 Kan. 531, 536, Syl ¶ 3, 280 P. 2d 630; *Thomas v. Hughes,* 177 Kan. 347, 351, 279 P. 2d 286; and *Hickert v. Wright,* 182 Kan. 100, 105, 319 P. 2d 152), it appears we are now confronted with a question of first impression which must be disposed of upon the basis of its own factual background under general rules and principles previously enunciated in other cases requiring interpretation and application of our guest statute.

Notwithstanding, what has just been stated, it should be noted at this point that in their briefs the parties cite and rely upon a number of our former decisions in support of their contentions

respecting the question now under consideration. By way of illustration, and in no sense to be regarded as including all cases cited, it may be said that in support of his position he was not a guest in appellee's automobile at the time of the collision appellant relies on *Elliott v. Behner,* 146 Kan. 827, 73 P. 2d 1116; *Sparks v. Getz,* 170 287, 225 P. 2d 106; *Thomas v. Hughes,* 177 Kan. 347, 279 P. 2d 286, while appellee, in support of his position appellant was a guest, relies on *Pilcher v. Erny,* 155 Kan. 257, 124 P. 2d 461; *In re Estate of Wright,* 170 Kan. 600, 228 P. 2d 911; *Bedenbender v. Walls,* 177 Kan. 531, 280 P. 2d 630; *In re Estate of Dikeman,* 178 Kan. 188, 284 P. 2d 622. And added, that since oral arguments, supplemental briefs have been submitted by the parties wherein appellant relies on *Kitzel v. Atkeson,* 173 Kan. 198, 245 P. 2d 170, as supporting his position and appellee insists that case is clearly distinguishable.

Moreover it should be pointed out that the above cited cases do not begin to exhaust the field of guest statute litigation in this jurisdiction. Since the enactment of that statute in 1931, as is evidenced by the annotations following the statute number in G. S. 1949 and G. S. 1957 Supp., numerous decisions involving its construction and application have reached this court. It goes without saying that the same is true in other jurisdictions having similar statutes. See, *e. g.,* 60 C. J. S., Motor Vehicles, § 339(1) c, p. 983; 5 Am. Jur., Automobiles, § 239, p. 634; and extensive annotations in 82 A. L. R., § 1365; 92 A. L. R., § 1180; 10 A. L. R., 2d § 1351, and like numbers in the respective supplemental services.

In view of the fact, as we have seen, that this case must be decided upon the basis of its own factual background under heretofore announced applicable rules and principles, it is neither necessary nor required, and we are not disposed, to labor the details of our previously cited decisions, relied on by the parties. They speak for themselves and may be read by interested readers upon resort to the Kansas reports in which they appear. By the same token nothing would be gained by burdening our reports with the numerous rules and principles therein announced which, by reason of the dissimilarity of the divers factual situations there involved have little, if any, application in the determination of whether, under the here existing facts and circumstances appellant was or was not a guest within the purview of 8-122b at the time of the involved collision.

We therefore turn to rules and principles here applicable, some of which it will be noted, as we proceed, are generally applicable while others are specifically so and more significant by reason of the particular and, we may add, the unusual facts of the instant case, as heretofore related.

■ The reasons for the enactment of the guest statute should be kept in mind in this case, as well as all other cases, where its application is in question. They were pointed out by this court soon after the law became effective. See *Bedenbender v. Walls*, supra, which reads:

"In the first case arising under the statute this court, in discussing the reason for its enactment, said, in *Stout v. Gallenmore* (1933), 138 Kan. 385, 26 P. 2d 573:

" 'This statute is the outgrowth of a thought which had become common among our people, that it was too easy under our law relating to liability for negligence for one riding in an automobile as a guest of the driver to recover damages for injuries sustained in an automobile casualty. Similar statutes have been enacted in other states.' (p. 389.)

"One year later, in *Koster v. Matson*, 139 Kan. 124, 30 P. 2d 107, the court further said, concerning the purpose of the statute:

" 'In the course of what we call progress, the motor vehicle appeared, was perfected, and its use became universal. Complaisant hosts invited or permitted guests to ride. Accidents occasioned by faulty driving occurred. Like Satan, the automobile damage suit industry came also. Also came insurance, leading to lawsuits between husband and wife, father and daughter, and mother and daughter. So it became necessary to adapt the law to the conditions created by the radical change in method of travel and transportation.' "
(p. 129.) (pp. 536, 537.)

■ Another rule to be remembered deals with the scope of the statute. It is well stated in *Bedenbender v. Walls*, supra. In that case, after quoting from *Chaplowe v. Powsner*, 119 Conn. 188, 175 A. 470, at page 537 of the opinion, it is held:

"Although the operation of the guest statute in denying a right of recovery should not be extended by construction, beyond the correction of the evils sought to be remedied, equally, the scope of the term 'guest' should not be so restricted as to defeat or impair those objectives." (Syl. ¶ 2.)

■ Touching the question of elements to be considered in determining the question whether a person is or is not a guest within the meaning of the statute (8-122b), this court has held:

". . . among the many elements to be considered are the identity and relationship of the parties; the circumstances of the transportation; the nature, type and amount of 'payment'; the benefits or advantages resulting to the respective parties growing out of the transportation; whether the 'payment,' of

61

whatever nature, constituted a tangible benefit to the operator and was the motivating influence for furnishing the transportation; and the nature and purpose of the trip." (Syl. ¶ 4.)

■ It is to be noted that the last above quotation from the Beden-bender case does not purport to set forth all the elements subject to consideration in determining the question whether a person is or is not a guest within the meaning of the statute. As early as *Pilcher v. Erny*, 155 Kan. 257, 124 P. 2d 461, we recognized that another element, just as important and equally decisive of the right of the parties, is entitled to consideration where, in the opinion, it is said:

"In *Arkansas Valley Cooperative Rural Elec. Co. v. Elkins*, (200 Ark 883.) 141 S. W. 2d 538, it was said:

" 'In determining who is a "guest" within meaning of the statute precluding recovery by a guest from driver of an automobile for injuries resulting from its operation, unless injuries are caused by the willful misconduct of driver, one important element is the identity of the persons advantaged by the carriage, and if the carriage tends to the promotion of mutual interests, of both passenger and driver, or if it is primarily for the attainment of some objective or purpose of driver, the passenger is not a "guest" within the statute.' " (Headnote 12.)

Later in *Sparks v. Getz*, 170 Kan. 287, 225 P. 2d 106, after pointing out that in *Srajer v. Schwartzman*, 164 Kan. 241, 188 P. 2d 971, it was held that, within the meaning of the guest statute "payment" for the transportation sufficient to preclude classification of the passenger as a "guest" need not be a payment in money, we said:

"In the Pilcher case, *supra*, we quoted with approval from *Ark Valley Cooperative Rural Elec. Co. v. Elkins*, 200 Ark. 883, 891, 141 S. W. 2d 538, where it was held an important element is the identity of the persons advantaged by the carriage, and if the carriage tends to the promotion of mutual interests, of both passenger and driver, or if it is primarily for the attainment of some objective or purpose of the driver, the passenger is not a guest within the statute." (p. 290.)

Still later in *Thomas v. Hughes*, 177 Kan. 347, 351, 279 P. 2d 286, after again referring to the Srajer case, the following statement appears:

"In the Pilcher case, *supra*, this court quoted with approval from an Arkansas case to the effect that in determining who is a guest one important element is identity of the persons advantaged by the transportation, and if the transportation tends to the promotion of mutual interests of both passenger and driver, or if it is primarily for the attainment of some objective or purpose of the driver, the passenger is not a guest within the statute." (p. 352.)

For just a few of the well-considered decisions from foreign jurisdictions, where the rule recognized and approved in the three cases

last above mentioned is followed and applied, see *Bree v. Lamb*, 120 Conn. 1, 178 A. 919; *Thuente v. Hart Motors*, 234 Iowa 1294, 15 N. W. 2d 622; *Scholz v. Leuer*, 7 Wash. 2d 76, 109 P. 2d 294.

With applicable rules established we turn again to the evidence which, since it has already been set forth at length, need not be repeated. It suffices to say that, when given the benefit of all reasonable inferences that may be drawn therefrom and construed in the light most favorable to him, the court believes appellant's evidence may be reasonably interpreted as establishing that all parties in appellee's automobile, at the time of the accident, were operating as a team and proceeding on a mandatory military mission, pursuant to official orders, hence the transportation furnished by appellee was for the promotion of the mutual interests of all such parties. When so construed, and applying the rule recognized and approved in the Pilcher, Sparks and Thomas cases, it cannot be held the evidence establishes, as a matter of law, that appellant was a guest in appellee's automobile on the date in question, within the meaning of that term as used in 8-122b, *supra*. That being so, the evidence was sufficient to withstand the portion of the demurrer based on the premise appellant had failed to take himself outside of the guest statute.

Appellee contends that even if appellant was not a guest the evidence, as a matter of law, fails to show ordinary negligence on the part of the appellee which could have been the proximate cause of the accident. Let us see. The record discloses that the collision occurred and that appellant sustained injuries as a result thereof while riding in the automobile, driven by appellee. It further reveals testimony of appellant to the effect that just prior to the accident appellee was driving sixty miles an hour in a thirty mile zone and continued at that rate of speed up to the scene of the collision at Tenth and Hope Streets. Moreover Davis, the driver of the other automobile, testified that when he first saw appellee and his approaching car "He was weaving, he was over on my side of the road, then he was over on his side." In the face of this evidence which, as we have heretofore pointed out, must be accepted as true for purposes of testing the ruling on the demurrer, this claim lacks merit and cannot be upheld.

In conclusion it should perhaps be stated we have disregarded, not overlooked, numerous contentions advanced by appellee, touching the sufficiency of the evidence, based on inferences to be drawn therefrom which must be regarded as contradicting the favorable

evidence to which we have heretofore referred. Under the rule, as we have repeatedly pointed out, we cannot weigh the evidence at this stage of the proceedings but must limit our review to portions thereof favorable to appellant's position.

From what has been heretofore stated and held it follows that appellee's demurrer was improperly sustained and the judgment which followed that action was erroneous. Therefore such judgment is reversed with directions to proceed in accord with the views expressed in the opinion.

It is so ordered.

PARKER, C. J. (dissenting): Time will not permit detailed reference to the record or a prolonged discussion of the authorities and I recognize that a dissenting opinion is of little benefit to the bench and bar.

Briefly stated, my views are that, when reviewed in the light of the rule stated in the opinion, the evidence of record discloses the plaintiff was a guest in the defendant's automobile on the date of the involved collision and that to hold otherwise is contrary to the intent and purpose of the legislature in enacting what is now G. S. 1949, 8-122b, as well as our former decisions construing its force and effect. Therefore I dissent from that portion of the opinion holding that the evidence is sufficient to withstand the part of the demurrer based on the premise plaintiff had failed to take himself outside of the guest statute.

Assuming as I must, since the majority opinion so holds, that plaintiff was a passenger and not a guest, I concur in the view expressed by the court, that defendant's contention plaintiff's evidence, as a matter of law, fails to show ordinary negligence on the part of defendant, which could have been the proximate cause of the involved collision, must be rejected.

PRICE, J., concurs in the foregoing dissenting opinion.