No. 43,199

IMAGENE COPE, Surviving Wife and Next of Kin of KENNETH O. COPE, *Appellee,* v. JACK RADFORD and THE BEECH AIRCRAFT CORPORATION, *Appellants.*

(383 P. 2d 563)

Opinion filed July 10, 1963.

*Albert L. Kamas,* of Wichita, argued the cause, and *Milton Zacharias, Kenneth H. Hiebsch, Richard A. Render, Donald E. Lambdin,* and *J. Dwain Schmidt,* all of Wichita, were with him on the briefs for the appellants.

*John H. Gerety,* of Wichita, argued the cause, and *Enos E. Hook* and

*Sidney L. Foulston, Jr.,* both of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from a judgment for wrongful death. The main question involved is whether the deceased was traveling as a guest or a paying passenger when the automobile accident occurred which caused the death.

In view of the limited issues, we need note only a single paragraph from the petition and answer. The petition alleged that the defendant, Jack Radford, was being paid by the defendant, Beech Aircraft Corporation, to make the trip in question in his automobile. The petition alleged further:

"That the plaintiff has been informed and believes and therefore alleges that the defendant, Jack Radford, in the course of his employment at the defendant, Beech Aircraft Corporation, was directed by the said defendant, Beech Aircraft Corporation, to use his privately owned automobile and transport the deceased, Kenneth O. Cope, Robert P. Beard, Captain Jack W. Setliff and himself, Jack Radford, to the defendant, Beech Aircraft Corporation, branch plant at Liberal, Kansas, where the said deceased, Kenneth O. Cope, and Robert P. Beard and Capitain Jack W. Setliff and the defendant, Jack Radford, were to engage in the inspection of Air Force Machinery and equipment located in the defendant, Beech Aircraft Corporation's facility; that said inspection was a routine semi-annual inspection; that said inspection was a part of the duties of all parties concerned and more particularly of the deceased, Kenneth O. Cope, and the defendants, Jack Radford and the Beech Aircraft Corporation."

The answer:

"Specifically denies that this defendant was directed by Beech Aircraft Corporation to transport the said Cope or any of the others named or that there was any agreement or understanding between this Defendant and Beech Aircraft Corporation by which this Defendant was to be paid and compensated for transporting the said Cope or that he was transporting Cope within the course of his employment or under any order or direction of Beech Aircraft Corporation, . . ."

The facts will be detailed.

The defendant, Beech Aircraft Corporation, during the year of 1959, was engaged in a manufacturing program which included government contracts as well as commercial production of their own airplanes. Its facilities included Plants 1, 2, and 3, as well as its home offices at Wichita, Kansas. There was, also, a plant at Liberal, Kansas.

On production other than commercial airplanes, when bids are

solicited, Beech figures the overhead as well as the cost of material, cost of labor, cost of production, and all other costs. A reasonable profit is included and the bid is submitted based on those calculations.

In order to assure the accuracy of the estimated overhead, the costs which were incurred on completed contracts of the past are used as a basis for the estimated overhead in submitting bids on new contracts. The overhead costs are furnished to the government on each contract for comparative purposes.

The accuracy of these estimates is important inasmuch as once the bid is accepted and reduced to a contract between Beech and its customer the compensation to be paid Beech becomes fixed and final. Any increase in overhead during actual production under an executed contract is not recovered by Beech. However, such increased costs are taken into account in determining the overhead for submitting bids on future contracts.

During December of 1959, Beech was engaged in production for the government having successfully submitted a bid which was accepted by the Air Force under the auspices of the Defense Department. In addition to the use of its own equipment, Beech leased industrial equipment from the government and paid rent for such use. Therefore, in addition to being a customer, the government also held the status of a lessor and Beech that of a lessee. Unlike any other customer or lessor, the government maintained, at its own expense, a plant representative's office which was situated at the home office of Beech. The office was staffed with Air Force personnel and several United States Civil Service employees. The government provided funds to maintain the office on a budget. Part of these funds were available for the reimbursement of its personnel for their travel expenditures.

Robert Beard, a civil service employee, had the responsibility to keep under surveillance on behalf of the government the use, by Beech, of the government owned industrial equipment so as to assure that it was being properly used and maintained. In order to maintain the surveillance, Beard made two inspections per year at the Liberal facility. On these semi-annual inspections, Beard was accompanied by a Beech representative. It was a matter of mutual convenience to both the government and to Beech to have both sides represented during the inspections.

In order to carry out his duties, it was necessary for Radford

to spend time at all Beech facilities. Inasmuch as it was not a practice for Beech to supply his transportation, Beech reimbursed Radford 7½ cents per mile for the use of his own automobile. As part of his duties, defendant Radford was the Beech representative who accompanied Beard on the government's semi-annual inspection of government industrial equipment at the Liberal facility.

Prior to the 10th day of December, 1959, Beard contacted Radford and made arrangements with him to make the government inspection on the government industrial equipment at Liberal. After clearing with their supervisors, Beard and Radford made plans to travel to Liberal, Kansas, on the 14th day of December, 1959. Only Beard and Radford were going and the sole purpose of their trip was to make the government inspection on the government industrial equipment.

Subsequent to the events stated, two other government men, Kenneth O. Cope, the deceased, and Captain Jack Setliff advised Beard that, with Radford's consent, they would like to ride along to Liberal, Kansas. Beard thereafter made inquiry of Radford who readily assented to Cope and Setliff riding along.

On the morning of the 14th day of December, 1959, the trip from Wichita to Liberal, Kansas, was commenced with all four men riding in Radford's automobile. The occupants had varied reasons for making the trip. Radford, the Beech employee, was to accompany Beard, the government inspector, on the government inspection of government industrial equipment at the Liberal facility. With regard to the government inspection, Beard and Radford operated as a team, each representing his employer's interest.

Insofar as Cope and Setliff were concerned, the purpose of their trip was completely unrelated to the inspection by Beard and Radford. There was nothing mandatory about Cope and Setliff making the trip to Liberal, Kansas. They would not have made the trip had there not been a ride readily available to them. Their presence was not required, they did not intend to, nor did they, participate in any activity concerning the inspection by Beard and Radford.

Upon arriving at the Liberal facility, and after having agreed to be ready to return to Wichita, Kansas, on the 16th day of December, 1959, the parties went their respective ways. Beard and Radford carried on the government inspection and Cope and Setliff met with management on unrelated matters. The inspection was com-

pleted on the evening of the 15th day of December, 1959. At no time during the inspection was Cope present, nor did he participate or carry on any conversations with Radford concerning the inspection.

On the 16th day of December, 1959, the parties all started back to Wichita, Kansas, in Radford's automobile. At the time the parties left Liberal, Kansas, Radford was driving in a range of 65 to 70 miles per hour. After leaving Meade, he drove in the area of 60 miles per hour until a light drizzle started. He then reduced his speed to a range of 50 and 55 miles per hour. At approximately 3:00 o'clock p. m. on Highway 160, they approached a curve about two and one half miles west of Attica, Kansas. When coming in from the west, it looked like a normal banked curve. However, it was real sharp and could be described as an approximate 80-degree flat and unbanked curve. The width of the road at that point measured 29 feet. There are two 20-mile-per-hour speed and curve signs on the approach from the west. One sign is located 780 feet west of where the curve begins, and the second sign is approximately 285 feet east of the first sign.

As Radford approached the curve, he was traveling somewhere in the range of 50 to 55 miles per hour. He removed his foot from the accelerator of the automobile and started into the curve. Neither he nor Cope, who was riding in the front seat with him, had noticed the two 20-mile-per-hour curve signs which were situated to the west. Radford suddenly realized the nature of the curve and touched his brakes lightly. The car started to skid and Radford removed his foot from the brakes and attempted to negotiate the turn. However, he skidded approximately the width of his automobile to the right and sideswiped two wooden posts and one metal sign. He came to a stop against the Santa Fe Railroad tracks. Cope died as a result of the accident. None of the passengers, at any time, objected to Radford's driving.

At the close of plaintiff's evidence, the defendants demurred thereto. The demurrer was overruled. A motion for a directed verdict, at the close of all the evidence, was also overruled. The case was submitted to the jury under the instructions as an ordinary negligence action. There was no reference as to the responsibilities and liabilities of the parties, or the nature of proof required under the guest statute.

The jury answered special questions and returned a general

verdict in favor of plaintiff for $16,513.10. The district court approved the verdict and defendants have appealed.

The appellants first contend that the trial court erred in failing to sustain a demurrer to appellee's evidence, and in failing to direct a verdict for defendant at the close of all of the evidence. We are forced to agree with appellant's contention.

It should be noted at the outset that this was an action to recover damages for the death of a passenger in an automobile against the driver and his employer. There was no allegation that the driver was guilty of gross and wanton negligence. Therefore, the plaintiff, in order to recover, had the burden of establishing that the deceased was a passenger for hire.

The Kansas Guest Statute, G. S. 1949, 8-122b, states:

"That no person who is transported by the owner or operator of a motor vehicle, as his guest, without payment for such transportation, shall have a cause of action for damage against such owner or operator for injury, death or damage, unless such injury, death or damage shall have resulted from the gross and wanton negligence of the operator of such motor vehicle."

In the case of *In re Estate of Wright,* 170 Kan. 600, 228 P. 2d 911, the court, on page 604 of its opinion, stated:

"We think the statute is clear that in order for one to recover for injury or for his representative to recover for a wrongful death occasioned while being transported in the motor vehicle of another, claimant must, to avoid the limitations of our guest statute, affirmatively show that he was not a guest, that he was being transported for 'payment' as that term is defined by our decisions hereinafter discussed, or that injury or death was caused by gross and wanton negligence of the operator of the vehicle. . . ."

The Court of Appeals, in *Broadwater v. Coleman,* (C. C. A. 10th) 224 F. 2d 186, stated:

". . . The Kansas courts have consistently held that every passenger riding in an automobile is presumed to be a guest until it is affirmatively shown that the motivating cause of the transportation was compensation. *In re Wright's Estate,* 170 Kan. 600, 228 P. 2d 911; *Leonard v. Maryland Casualty Company,* 158 Kan. 263, 146 P. 2d 378; *Pilcher v. Enry,* 155 Kan. 257, 124 P. 2d 461, 462. . . . (p. 188.)

Although the determination of whether the status of a passenger is that of a guest or a paying passenger, within the meaning of the statute, depends largely on the facts and circumstances in each particular case, this court has established many of the elements to be considered.

"In determining the question whether a person is or is not a 'guest' within the meaning of the statute, among the many elements to be considered are

the identity and relationship of the parties; the circumstances of the transportation; the nature, type and amount of 'payment'; the benefits or advantages resulting to the respective parties growning out of the transportation; whether the 'payment,' of whatever nature, constituted a tangible benefit to the operator and was the motivating influence for furnishing the transportation; and the nature and purpose of the trip.

"The word 'payment,' as used in the statute, is a variable term and is not restricted in meaning to a discharge in money of a sum due, or the performance of a pecuniary obligation. But, in order to preclude classification as a 'guest,' the 'payment,' of whatever nature, must constitute a benefit or advantage to the owner or operator which is a substantial consideration, motivating, and not merely incidental in character." (*Bedenbender v. Walls,* 177 Kan. 531, 280 P. 2d 630, syl. 4 & 5.)

It should also be stated that if the transportation tends to promote the mutual interest of both the passenger and the driver or is primarily for the promotion of the interest of the driver, the passenger is not a guest within the meaning of the statute. (*Sparks v. Getz,* 170 Kan. 287), 225 P. 2d 106; *Thomas v. Hughes,* 177 Kan. 347, 279 P. 2d 286, and *Lloyd v. Runge,* 186 Kan. 54, 348 P. 2d 594.)

It is clear from the record that neither Radford nor Beech received any monetary consideration from either the government or the passengers for their transportation. Beech paid Radford 7½ cents a mile for the trip. Beech was to receive nothing over and above its contract price for the completed manufacturing job. It received no additional compensation because the trip was made.

Neither were Cope and Setliff being transported to promote any special interest of the driver or his employer. Beard, as the representative of the government, and Radford, as the representative of his employer, were making the trip for the common purpose of inspecting the government leased equipment. Insofar as Cope, the deceased, and Setliff were concerned, the purpose of their trip was completely unrelated to the inspection to be made by Beard and Radford. There was nothing mandatory that Cope and Setliff make the trip to Liberal. They would not have made the trip had there not been a ride readily available for them. Their presence was not required, they did not intend to, nor did they, participate in any activity concerning the inspection made by Beard and Radford.

The petition does not allege, and there is no evidence to support a claim of, gross and wanton negligence against the driver of the motor vehicle. There being no evidence of payment for the

transporation of Cope, it must be concluded that he was traveling as a guest of Radford. The case should not have been submitted to the jury.

The judgment is reversed with instructions to the district court to enter judgment for the defendants.

APPROVED BY THE COURT.