No. 44,959

JACK GORELICK and ROBERTA GORELICK, *Appellants,* v. SHIRLEE ERNSTEIN, *Appellee.*

(438 P. 2d 93)

Opinion filed March 9, 1968.

*James L. Baska,* of Kansas City, argued the cause and *Clarence H. Wood,* also of Kansas City, was with him on the brief for the appellants.

*Edward M. Boddington, Jr.,* of Kansas City, argued the cause and *Edward M. Boddington, N. Jack Brown* and *Robert A. Unverferth,* all of Kansas City, were with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: Roberta Gorelick, one of the two plaintiffs, and Shirlee Ernstein, the defendant, are sisters, living near each other in Johnson County, Kansas. On the afternoon of June 10, 1963, the two sisters embarked on a shopping trip in Shirlee's car, each taking her two children along. At an intersection in Overland Park the car, driven by Shirlee, struck a light pole, and Roberta was seriously injured. Neither sister had a personal recollection of how the accident occurred.

This action was filed to recover damages for Roberta's personal injuries and for her husband, Jack's loss of consortium. The defendant, Shirlee, filed a motion for summary judgment which was sustained, and the plaintiffs, Jack and Roberta, have appealed. Throughout this opinion we shall refer to the parties either by their first names or as plaintiffs and defendant.

Gross negligence is not alleged by the plaintiffs and the sole question presented in this appeal is whether, from the record, Roberta, the injured passenger, is shown to have been a guest

within the purview of the Kansas guest statute, K. S. A. 8-122b, which reads:

"That no person who is transported by the owner or operator of a motor vehicle, as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or damage, unless such injury, death or damage shall have resulted from the gross and wanton negligence of the operator of such motor vehicle."

The depositions of both Roberta and Shirlee were before the trial court when the defendant's motion to dismiss was sustained, and pertinent excerpts from those depositions are set forth in the record before us. The following facts appear from the depositions.

At Shirlee's suggestion, the sisters had planned this particular shopping excursion to buy a Father's Day gift, and perhaps a birthday gift as well, for their new stepfather, Mr. Sigelbaum, and to select a birthday gift for Shirlee to give to her brother-in-law, Jack, Roberta's husband and co-plaintiff herein. Shirlee arranged to take her car, (although Roberta likewise had a car for her own use) and to pick up Roberta and her children at their home.

Roberta testified in her deposition that it was decided to go in one car because she and Shirlee were going to buy a joint gift for Mr. Sigelbaum; that they were both going shopping anyway, regardless of whether they got together; that they had made a practice of going in together on Mother's Day gifts for their mother; that sometimes she would drive her own car and sometimes Shirlee would drive hers; that many times when they were going in the same general area, she and Shirlee would go together.

In Shirlee's deposition she stated that plans to go shopping were made over the phone; that the purpose of the trip was to buy gifts (Father's Day and birthday) for their stepfather and a birthday gift for her to give Jack; that she suggested to Roberta she would like Roberta's ideas and help in picking out Jack's gift; that in the past she and Roberta had gone together and purchased a gift for their mother and the two had helped each other in buying gifts for the other's husband.

We have had no previous occasion to construe our guest statute as it relates to a family shopping tour. However, we are not wholly without landmarks to guide us, for our reports are studded with cases involving application of the statute to various and sundry situations, and certain well defined patterns have evolved therefrom.

Although the statute itself fails to define the word "guest," this court considered its meaning in *Elliott v. Behner*, 146 Kan. 827, 73 P. 2d 1116, where we said:

"The statute does not define the word 'guest' as used in the statute. Perhaps it is impossible to frame an accurate definition of that term. Its meaning must be worked out from the facts of the cases as they arise. . The common-law meaning of the term as given in the Restatement of Torts, section 490, *Comment a*, is as follows: 'The word "guest" is used to denote one whom the owner or possessor of a motor car or other vehicle invites or permits to ride with him as a gratuity, that is, without any financial return except such slight benefits as is customary to extend as part of the ordinary courtesies of the road.'" (p. 830.)

See, also, *Broadwater v. Coleman*, 224 F. 2d 186.

In their general import, our decisions have accorded with the common law definition. In the Elliott opinion, we said: "It seems clear that where the driver receives compensation, the passenger is not a guest." (p. 830.) It is apparent from our cases generally that an occupant of a motor car who pays for his transportation is not a guest, and in *Lightcap v. Mettling*, 196 Kan. 124, 409 P. 2d 792, we said that whether payment is directly from the *rider* to the driver is not material. We have said also that the compensation need not consist of money; that any substantial benefit accruing directly to the driver from the transportation of his passenger will be sufficient if it be motivating and not merely incidental in character. (*Sparks v. Getz*, 170 Kan. 287, 225 P. 2d 106; *Van Royen v. Osborn*, 181 Kan. 39, 309 P. 2d 630.)

In *Bedenbender v. Walls*, 177 Kan. 531, 280 P. 2d 630, we discussed the subject of payment, together with other elements to be considered in determining the status of a passenger riding in a car, and we there held:

"In determining the question whether a person is or is not a 'guest' within the meaning of the statute, among the many elements to be considered are the identity and relationship of the parties; the circumstances of the transportation; the nature, type and amount of 'payment'; the benefits or advantages resulting to the respective parties growing out of the transportation; whether the 'payment,' of whatever nature, constituted a tangible benefit to the operator and was the motivating influence for furnishing the transportation; and the nature and purpose of the trip. (Syl. ¶ 4.)

"The word 'payment,' as used in the statute, is a variable term and is not restricted in meaning to a discharge in money of a sum due, or the performance of a pecuniary obligation. But, in order to preclude classification as a 'guest,' the 'payment,' of whatever nature, must constitute a benefit or advantage to

the owner or operator which is a substantial consideration, motivating, and not merely incidental in character." (Syl. ¶ 5.)

Speaking for the Court of Appeals, in *Broadwater v. Coleman*, supra, Judge Pickett had this to say of our construction of the guest statute:

"The Kansas courts have consistently held that every passenger riding in an automobile is presumed to be a guest until it is affirmatively shown that the *motivating* cause of the transportation was compensation. *In re Wright's Estate*, 170 Kan. 600, 228 P. 2d 911; *Leonard v. Maryland Casualty Co.*, 158 Kan. 263, 146 P. 2d 378; *Pilcher v. Erny*, 155 Kan. 257, 124 P. 2d 461, 462. It is not necessary that the payment for the transportation be in money for a passenger to be a guest within the meaning of the statute. Any *substantial* consideration or benefit moving to the operator or owner of the vehicle will suffice." (p. 188.) (Emphasis supplied.)

Applying the standards formulated in the foregoing cases, which by no means exhaust the list, we believe it cannot be gainsaid that Roberta was a guest in her sister's car when she was injured. In Roberta's deposition she conceded she was paying Shirlee nothing for her transportation and that there was nothing financial between the two families.

The plaintiffs suggest, however, that Shirlee substantially benefited from the carriage of her sister in two respects: First, that the transportation was for their mutual benefit in buying gifts for Mr. Sigelbaum, and second, that Shirlee was advantaged in having Roberta's advice in buying a birthday gift for Jack, Roberta's husband.

It is true we have said more than once that where the transportation tends to promote the common interest of passenger and driver or where it is primarily to promote some interest of the driver, the passenger is not a guest within the meaning of the statutes. (*Cope v. Radford*, 191 Kan. 617, 623, 383 P. 2d 563, and cases cited therein.)

Nonetheless, we discern little merit in the plaintiffs' argument. In the first place we think it clear that Shirlee had no mercenary motives in making the trip. She would have gone shopping alone, as would Roberta, had the two of them not been able to go together. In the second place, any benefits which might have accrued to Shirlee from having her sister along were purely of a personal and social nature, and of trifling consequence at that. It would be unrealistic to characterize the purchase of a joint Father's Day gift for Mr. Sigelbaum, even if coupled with a birthday present,

as promoting a substantial mutual interest shared by these two siblings. And as for Jack's gift, the selection of an appropriate gift which Shirlee could give him might well have been as advantageous to his wife as to his sister-in-law. Household serenity is not always advanced when the master receives an unwanted or ill advised gift.

In our judgment, this shopping trip was activated by familial friendship and social amenity. The two sisters, who were also friends, obviously enjoyed each other's company and were accustomed to share in the selection of family gifts. On the occasion in question, Shirlee did no more than extend the ordinary usual and expected courtesy and hospitality in offering her car to provide transportation for both families. Whatever benefit or advantage might flow to Shirlee was not, as we view it, a substantial consideration for making the trip, but was merely incidental in nature.

Two cases involving shopping trips are cited by plaintiffs as supporting their position. (*Kruzie v. Sanders*, 23 C. 2d 237, 143 P. 2d 704 and *Greene v. Morse*, 375 S. W. 2d 411 [Mo.].) We have examined both these decisions and find them readily distinguishable from the case at hand.

Both cases involve round trips to distant cities taken at the urgent insistence of the driver. In neither case did the passenger have shopping of her own to do. In Kruzie, the passenger left her own work and made the trip solely to assist the driver in selecting presents and carrying packages. The parties in *Greene v. Morse*, supra, were sisters. The passenger sister went along because her sister was not feeling well, and drove all the way to Memphis and paid the parking fee there. Neither case is controlling under the circumstances existing here.

We believe this case does not differ significantly, as to its facts, from *Bedenbender v. Walls*, supra, which involved two couples who customarily took hunting trips together, the passengers paying for all gas, oil and meals, or from *In re Estate of Dikeman*, 178 Kan. 188, 284 P. 2d 622, where the driver and his passengers attended a lodge meeting together, the passengers agreeing to pay a reasonable amount for their transportation, or from *Allen v. Keck*, 113 F. Supp. 873, a hunting case where the passenger couple provided the gasoline used in the car.

The plain and unvarnished facts of this case can lead to but one conclusion—that the ill-fated trip was a sociable shopping excursion

according to family tradition, in which the element of compensation was entirely lacking as a motivating factor. We conclude the trial court did not err in sustaining the defendant's motion to dismiss this action and its judgment is affirmed.