CARL BEDENBENDER, *Appellant*, v. WILLIAM H. WALLS, *Appellee*.

No. 39,623

BEULAH BEDENBENDER, *Appellant*, v. WILLIAM H. WALLS, *Appellee*.

(280 P. 2d 630)

Opinion filed March 5, 1955.

*Payne H. Ratner, Jr.,* of Wichita, argued the cause, and *Payne H. Ratner, Louise Mattox, Russell Cranmer, Dale B. Stinson, Jr., Carroll F. Pope, Keith Eales, Cliff W. Ratner* and *William L. Fry,* all of Wichita, *Robert N. Allen,* of Chanute, and *Charles F. Forsyth,* of Erie, were with him on the briefs for the appellants.

*Robert C. Foulston,* of Wichita, argued the cause, and *George B. Powers, Samuel E. Bartlett, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Malcolm Miller, Robert N. Partridge* and *Robert M. Siefkin,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: The question in these consolidated appeals concerns the application of the guest statute, G. S. 1949, 8-122b.

The actions were to recover for personal injuries sustained in a one-automobile collision. Plaintiffs were riding in defendant's automobile, which was being driven by him. The actions were consolidated for trial below. Defendant was not charged with gross and wanton negligence, and it is not contended that plaintiffs' evidence established other than ordinary negligence. At the conclusion of plaintiffs' evidence a demurrer thereto was sustained on the ground recovery was precluded by the provisions of the guest statute. Plaintiffs have appealed.

Other than to state that the evidence followed closely the allegations of the petitions, it is unnecessary to discuss or summarize the pleadings. Plaintiffs' evidence was substantially as follows:

Plaintiffs are husband and wife and live in Chanute. Defendant and his wife reside in Wichita. The parties had been social and personal friends for years and particularly enjoyed going hunting together. They had gone on many such excursions in the past, such as to WaKeeney, Colony and on at least one occasion to Oklahoma. Some of these trips were taken in defendant's car; on others they had gone in plaintiffs' automobile. In connection with these hunting trips an agreement or understanding had existed with reference to payment of car expense and meals en route— that is, when they took defendant's car plaintiff husband paid for gasoline and oil and meals for the four of them, going and coming, and when they went in plaintiffs' car defendant paid those expenses. It appears that this arrangement had been carried out at all times in the past. It also appears that it had been customary for the husbands to share the driving, irrespective of whose car was used, and that the parties jointly determined the route to be taken.

In October, 1951, when defendant and his wife were guests in plaintiffs' home in Chanute, a pheasant hunting trip to Hastings, Nebraska, was discussed and the parties agreed to start out on the morning of November 11th. Some discussion was had concerning a Nebraska hunting license and as to what would be the best route to take. It was understood that the prior agreement and arrangement with respect to payment of expenses would apply to this trip—that is, the party who furnished the car would be relieved of the out-of-pocket expense for fuel and meals en route. Plaintiffs drove to Wichita on the evening of November 10th, and the next morning the four of them started out for Nebraska in defendant's car. After they left Wichita defendant inquired if it would be all

right to stop at Little River to visit some friends of his. Plaintiffs had no objection and so they stopped at Little River for a short time. At that place they hunted for ducks at a nearby pond, but finding none, proceeded on their way. At Great Bend the four of them had lunch, for which plaintiff husband paid. When they arrived at Osborne they stopped for gasoline and plaintiff husband paid for it. They proceeded northward toward Nebraska, with defendant driving. Plaintiff husband was in the right front seat and their wives were in the rear.

At a point north of Osborne plaintiff husband was examining a highway map and there was some conversation between him and defendant about there being a curve in the road a short distance ahead. Defendant was driving between sixty and seventy miles per hour when all of a sudden the car came upon the turn in the road. Defendant was unable to negotiate the turn and as a result the car went ahead into a sort of lane down across a railroad track and into a ditch. Plaintiffs sustained personal injuries, which, for our purposes, need not be detailed. It also should be stated that a reasonable inference to be drawn from the evidence is that defendant and his wife undoubtedly would not have taken the hunting trip had it not been for the presence and company of plaintiffs, and on the basis of their mutual understanding concerning all phases of the trip, including the payment of expenses, selection of route to be traveled, and equal right on the part of all concerned with respect to such things as driving.

In sustaining the demurrer to the evidence the court commented:

"The Court is of the opinion that this is a case wherein two couples decided to go to Nebraska on a hunting trip; that plans were made and the reason they took the Walls car was because of the dog. The Walls car was better equipped to take care of the dog that was going to be used on the hunting trip. The Court is of the opinion that the guest statute applies to this case and this set of facts.

"The Court is of the opinion that it was not the payment of expenses such as gasoline and oil and meals by the Bedenbenders for the Walls that was the motivating cause or factor for the taking of the trip, but that the motive that caused the taking of the trip was so the two couples could go together to Nebraska on a hunting trip.

"The Court is of the opinion that the guest statute was passed for these particular reasons, to prevent friends from their course of usual conduct of taking trips together, to prevent the passengers in the car suing the driver of the car for damages as a result of ordinary negligence that the driver of the car might be guilty of. The court is of the opinion that the guest statute

applies and therefore the demurrer to the evidence will be sustained in both cases."

The guest statute (G. S. 1949, 8-122b) reads:

"That no person who is transported by the owner or operator of a motor vehicle, as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or damage, unless such injury, death or damage shall have resulted from the gross and wanton negligence of the operator of such motor vehicle."

As heretofore stated, it is not contended the evidence established gross and wanton negligence. For purposes of argument, it is conceded that it did establish ordinary negligence.

The precise question, therefore, is this:

Were plaintiffs "guests," within the meaning of the statute?

If they were, the demurrer was properly sustained.

If they were not "guests," the demurrer should have been overruled.

Plaintiffs contend their evidence clearly established that the parties were engaged in a joint enterprise in that it showed (1) a contract or agreement, express or implied, (2) a common purpose in its performance, (3) a community of interest in the subject matter of the enterprise, and (4) joint participation in, or the right to participate jointly in, the control of the instrumentalities employed to achieve the ends of the enterprise, and we are cited to *Farmer v. Central Mut. Ins. Co.*, 145 Kan. 951, 67 P. 2d 511, as being in support thereof.

And, while plaintiffs concede this court has never held specifically that those engaged in a joint enterprise are outside the purview of the guest statute, it is contended that *Elliott v. Behner*, 146 Kan. 827, 73 P. 2d 1116, is persuasive on the question, and that it was error for the court to remove from consideration of the jury the question whether a joint enterprise did in fact exist. In that case it was held that where the occupants of a truck consisted of a number of men working for a county as a bridge crew and one member of the crew was driving and the driver had no right to choose or exclude any member of the crew as a passenger, the guest statute did not apply and the driver was liable for injuries resulting from his failure to exercise due care under the circumstances. It was further held that, assuming the driver and other occupants of the truck were engaged in a joint enterprise, it would not preclude one of them from recovering damages from the driver for injuries sustained through

the latter's negligence, and that the doctrine of imputed negligence had no application to the case.

Since the enactment of our guest statute in 1931 numerous cases involving its interpretation and application have reached this court, as is shown by the annotations to be found following the statute number in G. S. 1949 and G. S. 1953 Supp. The same is true of other jurisdictions having similar statutes, as evidenced by 60 C. J. S., Motor Vehicles, § 399 (1) c, p. 983; 5 Am. Jur., Automobiles, § 239, p. 634; and extensive annotations found at 82 A. L. R. 1365; 95 A. L. R. 1180, and 10 A. L. R. 2d 1321. Our most recent decision dealing with the statute is *Thomas v. Hughes*, 177 Kan. 347, 279 P. 2d 286 decided just six weeks ago.

Despite certain fundamental principles running through the decisions, such as the definition of "payment" (*Srajer v. Schwartzman*, 164 Kan. 241, 188 P. 2d 971), the chief motivating reason for plaintiff being in defendant's automobile (*Vogrin v. Bigger*, 159 Kan. 271, 154 P. 2d 111), and the identity and relationship of the persons advantaged by the transportation (*Pilcher v. Erny*, 155 Kan. 257, 124 P. 2d 461), the fact remains that in the over-all picture the court has found it necessary to decide each case upon its own factual background. In none of them, however, have we been called upon to decide the precise question presented here.

We concede there is merit to plaintiffs' contentions that the statute has denied recovery to innocent victims of the carelessness and negligence of automobile drivers because they have been classified as "guests," and that the statute thus many times has shifted the burden arising from the negligence of the driver to the innocent victim.

On the other hand, the wisdom of the statute, as with all legislation, is a matter for the legislature and not the courts.

In the first case arising under the statute this court, in discussing the reason for its enactment, said, in *Stout v. Gallemore* (1933), 138 Kan. 385, 26 P. 2d 573:

"This statute is the outgrowth of a thought which had become common among our people, that it was too easy under our law relating to liability for negligence for one riding in an automobile as a guest of the driver to recover damages for injuries sustained in an automobile casualty. Similar statutes have been enacted in other states." (p. 389.)

One year later, in *Koster v. Matson*, 139 Kan. 124, 30 P. 2d 107, the court further said, concerning the purpose of the statute:

"In the course of what we call progress, the motor vehicle appeared, was

perfected, and its use became universal. Complaisant hosts invited or permitted guests to ride. Accidents occasioned by faulty driving occurred. Like Satan, the automobile damage suit industry came also. Also came insurance, leading to lawsuits between husband and wife, father and daughter, and mother and daughter. So it became necessary to adapt the law to the conditions created by the radical change in method of travel and transportation." (p. 129.)

In discussing the purpose and object of the California guest statute, the court of that state said, in *Crawford v. Foster*, 110 Cal. App. 81, 293 Pac. 841:

"The purpose and object that the legislature had in mind, sometimes throws light upon the meaning of the language used. The situation that this section was apparently designed to prevent is well known. As the use of automobiles became almost universal, the proverbial ingratitude of the dog that bites the hand that feeds him, found a counterpart in the many cases that arose, where generous drivers, having offered rides to guests, later found themselves defendants in cases that often turned upon close questions of negligence. Undoubtedly, the legislature, in adopting this act, reflected a certain natural feeling as to the injustice of such a situation." (p. 87.)

In the case of *Chaplowe v. Powsner*, 119 Conn. 188, 175 A. 470, and reported at 95 A. L. R. 1177, this statement is found:

"Although the operation of the statute in denying a right of recovery should not be extended, by construction, beyond the correction of the evils and the attainment of the social objects sought by it . . ., equally, the scope of the term 'guest' should not be so restricted as to defeat or impair those purposes, as would be the case if one riding as a mere recipient of hospitality were excluded from the status of a guest." (pp. 1179, 1180.)

In our approach to this case, based upon the facts of record, we think it is well to bear in mind that the process of determining facts inevitably will be misleading unless each step bears a close relation to and is considered in the light of realities of life. In other words, to "theorize" is one thing—to examine and interpret facts in the light of practical everyday human experience is another.

With that as a basis, we think it may not be said the agreement by plaintiff husband to pay certain traveling expenses, such as gasoline and oil, was the motivating consideration or reason for defendant taking his car on the trip, notwithstanding the fact that after the trip had been commenced such payment by plaintiff did constitute a benefit to defendant owner in that he was thus relieved of making such expenditures himself. Neither do we regard the fact the parties had entered into an agreement concerning all phases of the trip, and which plaintiffs contend constituted a joint enterprise, as being of any particular importance in arriving at a

decision in the case. In fact, we think the question of joint enterprise, and the contentions made in connection therewith, have no bearing one way or the other.

The most that can be said of the situation is that the parties were engaged in a common enterprise, the purpose of which was mutual social pleasure and entertainment.

The question is—were plaintiffs "guests" within the meaning of the guest statute?

The facts already have been related and will not be repeated. They clearly show a situation of common everyday experience to everyone—that of reciprocal hospitality and social courtesy between friends when the undertaking is for the mutual social pleasure of the parties concerned. There was no relationship of mutual benefit between or among them other than of a social nature. The payment of certain traveling expenses by plaintiff husband amounted to nothing more than the exchange of social amenities and did not transform plaintiffs' status into that of passengers "for pay," when, without such exchange, they would be guests, and consequently was not "payment for such transportation" within the meaning of the statute. To hold otherwise would compel every host to dilute his hospitality and season it with the flavor of a bargain. The record presented supports only the conclusion that the sole purpose of the trip was the joint pleasure of the parties. Friendship and sociability were the basis of plaintiffs being in the car. In fact, we have no doubt but that at the time in question the parties would have resented any suggestion that their relationship was anything other than social and for mutual pleasure. One occupying the status of a guest should not be permitted to accept a gratuity under mental reservation, and, by a trifling reciprocity, convert it into a binding agreement having legal consequences.

In their briefs the parties cite numerous decisions from other jurisdictions which are persuasive of their respective contentions. Some involve "family trips," "football game excursions," "week-end hunting or vacation trips," and the like, in which the person being transported paid all or a part of the car expenses, either as the result of a prior "understanding" to that effect, tacit acquiescence thereof on the part of the driver, or the desire on the part of the one being transported "to do the right thing"—in other words, reciprocal hospitality between friends. All of these decisions have been examined and considered. To quote extensively from them would

only lengthen unnecessarily this opinion. Many are cited and reviewed in the A. L. R. Annotations, *supra*, (particularly at 10 A. L. R. 2d 1380) and the reader is referred thereto for an extensive coverage of the subject. We do, however, quote from a California case which, our study discloses, has been cited and followed in many decisions throughout the country. It is *McCann v. Hoffman* (1937), 9 C. 2d 279, 70 P. 2d 909:

"The great weight of authority is to the effect that the sharing of the cost of gasoline and oil consumed on a trip, when that trip is taken for pleasure or social purposes, is nothing more than the exchange of social amenities and does not transform into a passenger one who without such exchange would be a guest, and consequently is not payment for the transportation or compensation within the meaning of the statute. It is obvious that if a different result obtained under any construction of the statute its purposes would be defeated and its effect annulled. The relationships which will give rise to the status of a passenger must confer a benefit of a tangible nature and are limited. . . .

"Therefore, where a special tangible benefit to the defendant was the motivating influence for furnishing the transportation, compensation may be said to have been given. But it is not given where the main purpose of the trip is the joint pleasure of the participants. The payment of a portion of the expense, as for gasoline and oil consumed on the trip, is merely incidental and does not constitute the moving influence for the transportation. The provocation for the offer of transportation remains the joint social one of reciprocal hospitality or pleasure." (pp. 285, 286.)

In passing, it should be stated that we are aware of the fact there is not complete unanimity in the decisions covering situations somewhat similar to the instant case, but from our study and analysis of the question we are convinced that the views herein expressed are in harmony with the more logical, and certainly the general weight of authority view, throughout the land.

Under all of the facts and circumstances disclosed by the record we hold that plaintiffs occupied the status of "guests" within the meaning of the statute, and that the demurrer to their evidence was correctly sustained.

In each case the judgment of the lower court is therefore affirmed.

SMITH, J., dissents.