No. 42,098

SHIRLEY SWINNEY, a Minor, by JOHN W. SWINNEY, Her Father, Next Friend, and Natural Guardian, *Appellant,* v. JAMES EDWARD WARD, *Appellee.*

(360 P. 2d 193)

Opinion filed March 4, 1961.

*Milton Zacharias,* of Wichita, argued the cause, and *Kenneth H. Hiebsch, Richard A. Render, Albert L. Kamas, Donald E. Lambdin* and *David G. Arst,* all of Wichita, were with him on the briefs for the appellant.

*Robert C. Foulston,* of Wichita, argued the cause, and *George B. Powers, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris, Gerald Sawatzky, Donald L. Cordes* and *Robert L. Howard,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

JACKSON, J.: This appeal concerns an automobile accident in which the appellant-plaintiff suffered most grievous, permanent injuries. She was a passenger in the automobile driven by the appellee-defendant, and the statute known as the "guest statute" (G. S. 1949, 8-122b) is involved in the case. As shown above, the plaintiff brought the case by her father and natural guardian, and at the close of the plaintiff's evidence, the district court sustained a demurrer to plaintiff's evidence. Plaintiff's appeal is from the ruling on the demurrer.

Before recounting the evidence introduced by plaintiff, we shall again announce the well-known rule that upon a demurrer to the evidence, the plaintiff's evidence is entitled to every favorable construction which may be found therein. The rule is carefully stated in our late case of *Drake v. Moore,* 184 Kan. 309, 336 P. 2d 807, where at page 313 we find the following:

"In testing the sufficiency of evidence as against a demurrer, the court shall consider all of plaintiff's evidence as true, shall consider that favorable to plaintiff, together with all reasonable inferences to be drawn therefrom and disregard that unfavorable to plaintiff, and shall not weigh any part that is contradictory nor weigh any differences between the direct and cross-examination; and if so considered, there is any evidence which sustains plaintiff's case on any theory, the demurrer should be overruled."

The Drake opinion then proceeds to cite a multitude of former cases from which the above rule is derived. Attention may also be directed to *Hoff v. Johnston,* 186 Kan. 214, 349 P. 2d 873, which follows the Drake case, see p. 217, *et seq.,* and to *Johnson, Administrator v. Huskey,* 186 Kan. 282, p. 283, 350 P. 2d 14, which was a case involving the "guest statute."

The plaintiff in reality raises two questions as to the evidence which was produced upon her behalf: Was the plaintiff, at the time of the accident, a guest within the meaning of G. S. 1949, 8-122b? Was sufficient evidence produced to go to the jury upon the question of gross and wanton negligence on the part of defendant so that defendant might be responsible under the said statute even though plaintiff was a guest of the defendant?

We shall attempt to summarize the evidence produced upon plaintiff's behalf, and where there be any matters of conflicting fact, we shall show the facts as most favorable to plaintiff in accord with the rule on demurrer set out *supra*.

In September, 1958, the plaintiff was an eighteen-year-old girl living with her mother and father in Wichita as part of their family which included three other children. She is said to have made the acquaintance of the defendant in July or August of 1958, and defendant lived near plaintiff's father's home and within sight thereof. The accident in which plaintiff received the injuries which gave rise to this action occurred on September 14, 1958, which was Sunday. On the Friday evening before the 14th of September, plaintiff had a "date" with another young man who returned her to her home at about 11:00 Friday evening.

Plaintiff, after returning home, went to the house of the defendant. The defendant and she were the only occupants of the house and she stayed with the defendant until after the accident here involved.

The defendant's deposition was taken at the Minnesota State Prison, where at that time he was incarcerated, and was introduced in evidence. We shall not recount defendant's record of felony convictions but it would appear that he was twenty-four years of age in September, 1958.

Defendant testified that he knew plaintiff was having trouble with her parents; that he offered to help her leave home. During Saturday and Sunday, defendant had several contacts with plaintiff's parents who suspected that defendant might know of plaintiff's whereabouts. Both the mother and father came to defendant's house during Saturday and defendant falsely told them he did not know where plaintiff was and offered to help find her. At that time, she was hiding in defendant's bedroom.

Sometime on Saturday or Sunday, plaintiff's parents notified the police and the radio stations of plaintiff's absence. Plaintiff's father

returned to defendant's house again on Sunday. Again plaintiff hid herself, while defendant invited him in to have a cup of coffee.

On Sunday, plaintiff telephoned a friend of hers, Marjorie Wrench, to discuss the situation. It was arranged that plaintiff and defendant would meet a number of their friends at a certain drug store, since it was suspected plaintiff's parents were also watching the Wrench house. Plaintiff crouched down in defendant's car so that she would not be observed as they left defendant's house to drive to the drug store.

At the drug store, a group of these misguided young people discussed plaintiff's situation. It was determined that she could not stay in Wichita. One of the boys suggested that he had friends or relatives in Topeka who would take plaintiff in and help her get a job. The group decided that plaintiff should be taken to Topeka.

At this point, defendant's deposition reads as follows:

"My motivating cause to go to Topeka on that day was just to help Shirley and try to get her started off right if I could. Obviously the situation that existed was no longer possible because we were both in a bad state of nerves from this constant hiding and sneaking and secrecy and lying and deceit, etc. Neither one of us found this situation to our liking. It was to my benefit as well as to hers that I get her out of Wichita away from her parents. I didn't want to be separated from her, but there seemed to be no way we could set her up in the City of Wichita, because her parents were pretty obstinate. (Tr. 76.)

"They (Shirley's parents) actually didn't want her to go out with me. They (Shirley's parents) didn't consider me the right type of person. I have met the Swinneys. I believe Shirley had made up her mind to leave home and I might have been a contributing factor, but I don't believe I was. Anyway, the primary cause of her leaving home was taken independently by her, this decision. On this Sunday morning, the 14th, Shirley was willing to do just about anything we kids decided, because she was desperate at that time. She didn't ask for me to take her to Topeka or to any other place in the city. She didn't like to impose on me to that extent. She knew I had to start school in the morning, and she wasn't sure I could make it back that night so she wanted to make it easy on me too. I did not go by home to pick up clothes of Shirley. I believe all Shirley had she was wearing."

There was some discussion as to what car would be used for the trip to Topeka and who would pay for the gasoline, but no one seemed to have a car or any money. Plaintiff was defendant's girl, so defendant agreed to take his car and pay for the gasoline.

By this time, it was getting on toward evening and was raining to some extent. Plaintiff rode in the front seat with defendant and the back seat was occupied by Jimmie Joe Pemberton, Marjorie and

Mike Wrench. Pemberton was the person who had the friends in Topeka.

Defendant took a short cut to U. S. highway 81 and drove north to Newton. He states that he was driving as fast as conditions would allow; that he determined that each time he passed a car going in the same direction, the wheels of the vehicle passed would throw up a heavy sheet of water onto his windshield so that he would be blinded for a few seconds until his wipers were able to catch up and clear the glass.

By the time they reached Newton, defendant said it was raining harder and was getting twilight. He turned his headlights on and started east from Newton on U. S. highway 50. About three and one half miles east of Newton, defendant came up behind an automobile pulling a double horse trailer. Defendant's testimony is not too clear as to how he operated his car in attempting to pass this obstruction. He does state that he noticed a pair of headlights which seemed to have crested a slight hill coming toward him a mile or mile and a half away. He fully realized that his vision would be nil as soon as the wave of water hit his windshield until he got out of it and his wipers cleared the windshield. He admits the other car he was trying to pass was proceeding at a good rate of speed.

Defendant testified that as he started around, his windshield was obscured. Just as he got it cleared, he saw a car coming west toward him. This westbound car was skidding sideways, obviously because the brakes had been applied in an effort to avoid the collision. Defendant said he tried to take to the ditch but hit the other car in just a moment before anything else could be done.

We now turn to the testimony of Rex Clothier, a trooper of the Kansas highway patrol. He had gone on duty at 5:00 p. m. of the day in question. He was located at the Valley Center road and U. S. highway 81. It was raining, low overcast, gray haze and visibility was approximately a quarter to a half mile. He received an emergency call and report of an accident at 6:25 p. m. He reported his position and at 6:28 received instructions to proceed to the scene of the accident on highway 50 east of Newton. He ran into difficulty by way of weather conditions and visibility conditions that prevented him from proceeding to the scene of the accident as he usually did. There was water standing in the low spots and in the low portions of the roadway and he drove more slowly than usual. This created a type of hazard.

"I encountered normal traffic on 81 going to Newton, but on U. S. 50 east of Newton, I encountered heavy traffic due to the Kansas State Fair at Hutchinson during that week of September."

It will not be necessary to recount the full testimony of the trooper as to what he found at the scene of the accident. Another trooper and the Harvey county sheriff were there when he arrived.

The trooper talked with Mr. Kline the driver of the westbound car with which defendant had collided. Kline was very nervous and excited but said he had put on his brakes immediately when he saw defendant's car in the wrong lane of traffic.

He also talked with Pemberton, the passenger in defendant's car, who expressed some doubt that Kline had his lights on before the accident. The trooper investigated the Kline car and found the light switch pulled out, and thought the lights had been disconnected because of the danger of fire due to spilled gasoline.

The defendant appears to have been knocked unconscious by the accident. On the next day, trooper Clothier interviewed the defendant at a Newton hospital. In the opinion of the trooper, the defendant was rational. Concerning his conversation with defendant, the trooper testified in part as follows:

"I asked Mr. Ward to tell me in his own words to the best of his ability, what had happened. He stated that he was following this vehicle, tried to pass him a time or two previously and a car passed going west, and thinking the way was clear, he stepped down on the accelerator, pulled out without looking and started to pass this car."

The trooper also testified that he had discussed with Pemberton the defendant's "repeated" attempts to pass the car. Pemberton stated he thought defendant had attempted to pass once or twice.

The trooper further said defendant told him that he was driving between 65 and 70 miles per hour at the time of the accident. The trooper determined the speed of the car pulling the trailer at 40 to 45, apparently from talking with the driver of the car. He also stated that Mr. Kline, driver of the oncoming car, said he was driving 60 to 65 miles per hour.

Kline was a witness for the plaintiff. He was driving west toward Newton at 55 to 60 miles per hour—it is possible he told the trooper 60 to 65. He knows he had his lights on because he remembers his little boy spoke about it. There was a light rain falling and he had his windshield wipers on. He saw two headlights approaching from the west. Suddenly there were four and his wife shouted: "There

is a car coming right at us." He immediately applied his brakes which caused his car to go into a skid—a counter-clockwise whirl. The picture attached to the abstract, which was introduced in evidence, indicates the Kline car was struck in the rear—the trunk being practically torn off.

It should also be noted that trooper Clothier testified he had made measurements and found that from a certain slight curve in the road, where defendant says he saw the lights coming over the crest of a hill, to the crest of that hill was one mile and three to five-tenths; that "the point of impact from this curve was approximately eight-tenths of a mile and it was five-tenths of a mile from the crest of the hill to the point of impact."

From the above testimony, it would appear that it was the Kline car which defendant had seen and knew was approaching as he started around the car pulling the horse trailer.

The above summary of the evidence is not entirely complete, but we believe it is sufficient for our purposes. We believe this evidence was sufficient to go to the jury upon the question of wanton conduct under the guest statute and that the trial court erred in sustaining the demurrer to the plaintiff's evidence for that reason.

As this court has held many times before, the phrase "gross and wanton negligence" used in the guest statute (G. S. 1949, 8-122b) has been defined as wanton conduct. Wanton conduct is something more than ordinary negligence, and yet something less than willful injury. The act in question must indicate a realization of the imminence of danger and a reckless disregard and complete indifference and unconcern for the probable consequences of the act. This is the rule adhered to in the following cases: *Long v. Foley,* 180 Kan. 83, at 89, 299 P. 2d 63; *Dirks v. Gates,* 182 Kan. 581, 589, 322 P. 2d 750; *Hickert v. Wright,* 182 Kan. 100, 319 P. 2d 152, syl. ¶ 3; *Perry v. Schmitt,* 184 Kan. 758, 339 P. 2d 36; *Johnson, Administrator v. Huskey,* supra, p. 284. Many more of the decisions of this court are to the same effect, some of which are cited in the cases referred to above.

In this case we have a driver proceeding in the overcast and rain at twilight with limited vision at best, and with a wet pavement which would cause an automobile to skid and impair the control thereof. Further, he has seen another car approaching from the opposite direction and is driving in heavy traffic. He is still further aware that if he tries to pass the car pulling the long trailer his

vision will be completely cut off for several seconds just as he starts to pass the car. Despite all of these known factors, he accelerated his car to the speed of 65 to 70 miles per hour and into the left lane of the road without even trying to see whether another car was approaching. Actually, if he had remained behind the other car a sufficient distance, apparently he could have observed whether it was safe to try to pass. This he consciously refused to do. He was well aware of the danger and there was evidence from which the jury could have found that he was too unconcerned and reckless to avoid it.

Since the plaintiff will have a new trial at which the evidence may differ from that of the last trial, the court does not wish to pass upon the question of whether plaintiff was a guest in the car of the defendant.

The trial court is directed to set aside its order sustaining the demurrer to the plaintiff's evidence, and to grant plaintiff a new trial.

It is so ordered.