No. 47,101

TERRY A. HENRY, By and Through her Father and next Friend, KENNYTH HENRY, *Appellant*, v. THOMAS W. BAUDER, By and Through his Father and next Friend, THOMAS M. BAUDER, *Appellee*.

(518 P. 2d 362)

Opinion filed January 26, 1974.

*Michael G. Norris*, of Olathe, argued the cause, and was on the brief for the appellant.

*Barton Brown*, of Overland Park, argued the cause, and *Larry Austin*, of Overland Park, was with him on the brief for the appellee.

*Patrick F. Kelly*, of Wichita, Kansas Trial Lawyers Association, was on the brief *amicus curiae*.

The opinion of the court was delivered by

PRAGER, J.: This case involves the constitutionality of the Kansas guest statute, K. S. A. 8-122b. On October 16, 1971, the plaintiff-appellant, Terry A. Henry, a sixteen-year-old girl, was a guest passenger in an automobile operated by the defendant-appellee, Thomas W. Bauder. A collision occurred and plaintiff suffered severe personal injuries. The original action in district court involved an additional defendant who was the driver of the other vehicle. However, this appeal is only concerned with that portion of the petition which charged the defendant Bauder with ordinary

negligence. The trial court dismissed that portion of the plaintiff's claim on the basis of the Kansas guest statute which reads as follows:

"8-122b. Right of guest to collect damages from owner or operator. That no person who is transported by the owner or operator of a motor vehicle, as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or damage, unless such injury, death or damage shall have resulted from the gross and wanton negligence of the operator of such motor vehicle."

The practical effect of the statute is to deny to nonpaying guests any remedy at all where the driver has failed to use reasonable care in the operation of his automobile. The driver is legally liable only where he has been guilty of some act constituting recklessness or wilful or wanton misconduct.

The plaintiff assails the constitutionality of the Kansas guest statute on two theories. First, plaintiff contends that the guest act deprives her as a guest passenger of a "remedy by due course of law" under Section 18 of the Bill of Rights of the Kansas Constitution. Second, she contends that the guest statute is violative of the "equal protection" provision of the Fourteenth Amendment to the United States Constitution in that the statute discriminates between "guests" and "paying passengers" in a manner which bears no rational relationship to the purposes of the legislation. The plaintiff's first theory of unconstitutionality has been raised in several previous Kansas cases and rejected by this court. (*Bailey v. Resner*, 168 Kan. 439, 214 P. 2d 323; *Wright v. Pizel*, 168 Kan. 493, 214 P. 2d 328; and *Westover v. Schaffer*, 205 Kan. 62, 468 P. 2d 251.) *Westover* was decided by this court in 1970 and we will not consider the rationale of those decisions insofar as it relates to Section 18 of the Bill of Rights of the Kansas Constitution.

The plaintiff's second contention that the guest statute denies to her equal protection of the law has not previously been raised in this state. We will consider that question as a matter of first impression and determine the issue on its merits. The equal protection clause of the Fourteenth Amendment to the United States Constitution finds its counterpart in Sections 1 and 2 of the Bill of Rights of the Kansas Constitution which declares in substance that "all men are possessed of equal and inalienable natural rights, among which are life, liberty and the pursuit of happiness," and that "all free governments . . . are instituted for the equal protection and benefit of the people." While these two provisions of our Bill of Rights declare a political truth, they are given much the same

effect as the clauses of the Fourteenth Amendment relating to due process and equal protection of the law. (*Tri-State Hotel Co. v. Londerholm,* 195 Kan. 748, 408 P. 2d 877.) In *Tri-State Hotel Co.,* Mr. Justice Fatzer set forth clearly and concisely the rules to govern the courts of this state in determining issues pertaining to the constitutionality of legislative enactments. There he stated:

"This court is by the Constitution not made the critic of the legislature, but rather, the guardian of the Constitution; and every legislative act comes before this court surrounded with the presumption of constitutionality. That presumption continues until the Act under review clearly appears to contravene some provision of the Constitution. All doubts of invalidity must be resolved in favor of the law. It is not in our province to weigh the desirability of social or economic policy underlying the statute or to question its wisdom; those are purely legislative matters. . . . While the legislature is vested with a wide discretion to determine for itself what is inimical to the public welfare which is fairly designed to protect the public against the evils which might otherwise occur, it cannot, under the guise of the police power, enact unequal, unreasonable or oppressive legislation or that which violates the Constitution. If the classification provided is arbitrary, . . . and has no reasonable relation to objects sought to be attained, the legislature transcended the limits of its power in interfering with the rights of persons affected by the Act. . . ." (p. 760.)

In *Pinkerton v. Schwiethale,* 208 Kan. 596, 493 P. 2d 200, we stated that reasonable classifications of persons are permissible, for it is only invidious discrimination which offends. A classification employed in the exercise of police power cannot be made arbitrarily. Any distinctions inherent in a particular classification must furnish a proper and reasonable basis for such a classification. The concept of equality of all citizens under the law is, of course, basic to our free society. We have stated that classifications may not be created arbitrarily, discriminatorily or unreasonably, or the principle of equality would be violated. There must be some difference in character, condition, or situation, to justify distinction, and this difference must bear a just and proper relation to the proposed classification and regulation; otherwise, the classification is forced and unreal, and greater burdens are, in fact, imposed on some than on others of the same desert. (*The State v. Heitman,* 105 Kan. 139, 181 Pac. 630.)

The United States Supreme Court in *Reed v. Reed,* 404 U. S. 71, 30 L. Ed. 2d 225, 92 S. Ct. 251, declared that the equal protection clause of the Fourteenth Amendment to the United States Constitution, does not deny to the states the power to create distinct classifications of persons in different ways. The equal protection clause of that

amendment does, however, deny to a state the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike."

The problem presented in this case is essentially to determine the reasonableness of the classifications provided under the Kansas guest statute. In short, is the statutory classification between "non-paying guest" and "paying passenger" reasonable or is it arbitrary and unreasonable? In February of 1973 the Supreme Court of California, in *Brown v. Merlo*, 8 Cal. 3d 855, 506 P. 2d 212, 106 Cal. Rptr. 388, considered the California guest statute and held it unconstitutional as a denial of equal protection of the law as embodied in the California Constitution and the Fourteenth Amendment to the United States Constitution. In *Brown* the court considered and applied the basic principles governing equal protection of the law which are set forth above. The California Supreme Court held the guest statute of that state unconstitutional for the reason that the statute withdrew from automobile "guests" *i. e.*, passengers who give no compensation for their ride, the protection against negligently inflicted injury which California law generally affords to all others. We are impressed with the sound rationale of the opinion in *Brown*. The result reached by the Supreme Court of California in *Brown* in our judgment is reasonable and in accordance with our concept of equal justice under the law.

We hold that the Kansas guest statute, K. S. A. 8-122b, is unconstitutional and void as a denial of equal protection of the law under the Fourteenth Amendment to the United States Constitution and Sections 1 and 2 of the Kansas Bill of Rights. In reaching this conclusion we do *not* do so on the basis of the wisdom of the statute but solely on the basis that the classifications provided in the statute as interpreted by our judicial decisions are arbitrary and discriminatory and have no rational basis.

Prior to the enactment of the guest statute in Kansas in 1931 it was the rule of this court that the host driver of an automobile should not expose his guest passenger to risk of harm by act or omission which violates the common standard of conduct, the conduct of a reasonable man. (*Howse v. Weinrich*, 133 Kan. 132, 298

Pac. 766.) That rule goes back to horse and buggy days where we held in *Mayberry v. Sivey,* 18 Kan. 291, 293, (1877), that the law requires from all persons, including those who render gratuitous services, reasonable care for the safety of life and person. This is the rule generally followed throughout the United States. The basis of the rule was and is that in a free society a citizen should be responsible for his tortious acts which injure the person or property of others. The law also placed upon the guest passenger a correlative duty to exercise due care for his own protection.

Connecticut enacted the first guest statute in 1927; that state also was the first state to repeal its guest statute in 1937. Automobile guest statutes have been adopted in slightly more than one-half of the states. They all provide in substance that the driver of an automobile is liable to one who is riding as a gratuitous guest in his car only for some form of aggravated misconduct. There is so much individual variation in the statutes, and in their interpretation, that it may safely be said that there are as many different guest laws as there are acts. (Prosser, Torts 4th Ed., ch. 5, § 34, p. 186.) Essentially the theory of the acts is that one who receives a gratuitous favor in the form of a free ride has no right to demand that his host shall exercise ordinary care not to injure him. Professor Prosser describes the typical guest act case as that of the driver who offers his friend a lift to the office or invites him out to dinner, negligently drives him into a collision, and fractures his skull—after which the driver and his insurance company take refuge in the statute. A review of guest legislation throughout the United States is presented in some depth in *Delany v. Badame,* 49 Ill. 2d 168, 274 N. E. 2d 353. Several states have repealed their guest statutes, the most recent of which is Florida which did so in 1972. Significantly, no state has enacted a guest statute since 1939.

Following its enactment in 1931, the Kansas guest statute has been before this court for interpretation in many cases. It has caused the court a great deal of difficulty in determining who is a guest, what constitutes payment for transportation, and what acts of the driver are sufficient to constitute wanton misconduct. The overall impact of the statute was well described by Mr. Justice Price when he made the following observation in *Bedenbender v. Walls,* 177 Kan. 531, 280 P. 2d 630:

"We concede there is merit to plaintiffs' contentions that the statute has denied recovery to innocent victims of the carelessness and negligence of

automobile drivers because they have been classified as 'guests,' and that the statute thus many times has shifted the burden arising from the negligence of the driver to the innocent victim." (p. 536.)

A review of the decisions of this court reveals a crazy-quilt pattern of application of the guest act which permits recovery in many factual situations and denies recovery in others. Some of these decisions clearly show the inequities of the statute and the resulting denial of equal justice to persons similarly situated. In order for the act to apply the guest must be transportated in a *motor vehicle*. In *In re Estate of Hayden*, 174 Kan. 140, 254 P. 2d 813, we held that an airplane is not a motor vehicle within the meaning of the guest statute and therefore a nonpaying passenger could recover for the ordinary negligence of the pilot. In that case we declared that the guest statute applied only "to persons who are transported by owners or operators of motor vehicles, on the highways of the state." In applying the statute we held that the term "motor vehicle" as used in the statute should conform to the definition of a motor vehicle contained in the motor vehicle code which defined a vehicle as every device where or upon which a person may be drawn on a *public highway*. Although not directly involved in that case the rationale of the decision would reasonably infer that the guest statute does not apply where an automobile injury occurs in a private driveway or parking lot not located on the public highway. Ordinarily statutes relating specifically and solely to the operation of vehicles on public highways do not pertain to the operation of vehicles on private property. (*Smith v. Bassett*, 159 Kan. 128, 132, 152 P. 2d 794.) Under this rationale the guest statute would not, of course, be applicable to a nonpaying guest injured while riding in a motor boat since the injury did not occur on a public highway.

We have held that in order for the guest statute to be applicable the injury to the guest must occur *during the course of the transportation*. Where nonpaying guest was in the process of entering the automobile and was injured when the driver suddenly drove forward, the injured guest was deemed not to be one who was being transported within the meaning of the guest statute and therefore could recover for the driver's ordinary negligence. (*Chapman v. Parker*, 203 Kan. 440, 454 P. 2d 506.) A different rule was applied, however, where the ride had been completed and the injured guest, having departed from the vehicle, was in the process of closing the door of the automobile when it suddenly

moved forward. In that situation the guest statute was held to apply and the injured guest could recover only on proof of wanton misconduct. (*Marsh v. Hogeboom,* 167 Kan. 349, 205 P. 2d 1190.) Why should an entering guest be treated differently under the law than a departing guest?

On the question of what constitutes payment sufficient for the guest statute to apply, the result has been to permit recovery in some cases and to deny recovery in others. In *Carruth v. Cunningham,* 207 Kan. 781, 486 P. 2d 1401, we held that whether a person is a "guest" within the meaning of the guest statute depends upon the facts and circumstances of the particular case. In determining that question among the many elements to be considered are the identity and relationship of the parties; the circumstances of the transportation; the nature, type and amount of payment; the benefits or advantages resulting to the respective parties growing out of the transportation; whether the payment, of whatever nature, constituted a tangible benefit to the operator and was the motivating influence for furnishing the transportation; and the nature and purpose of the trip. (*Bedenbender v. Walls,* supra.) Sometimes a payment of money will take the passenger out of the operation of the guest statute and sometimes it will not. Even if payment is made, if the trip is for social benefits and pleasures, the guest statute applies and the guest is barred from recovery. (*Rothwell v. Transmeier,* 206 Kan. 199, 477 P. 2d 960.) A person who pays a driver $2 per week to a fellow employee for transportation from his home to work under a prearranged agreement is not a "guest" and may recover for the ordinary negligence of the driver. (*Ward v. Dwyer,* 177 Kan. 212, 277 P. 2d 644.) Where the purpose of a ride is not purely social, any substantial benefit to the driver is sufficient to take the case out of the operation of the guest statute even if no actual payment in money is made to the driver. (*Ehrsam v. Borgen,* 185 Kan. 776, 347 P. 2d 260.) In *In re Estate of Dikeman,* 178 Kan. 188, 284 P. 2d 622, the driver and his passenger were delegates to attend the national meeting of a fraternal organization. The passenger orally *agreed* she would pay the driver a reasonable sum for the transportation. We held that in spite of the agreed payment of compensation the guest statute was applicable and the paying passenger could not recover for the negligence of the driver. From these decisions it is obvious that under different factual situations

even paying passengers are afforded different treatment under the law where they sue the driver to recover for personal injuries.

The guest statute by its terms has no application where the driver of an automobile gratuitously transports the personal property of another and the owner of the property is not riding in the vehicle at the time the collision occurs. In that situation there is no *person* being transported by the owner and the guest statute would not be applicable. The result is that property rights are protected while personal rights are denied protection. This discrimination was pointed out in *Stevens v. Stevens*, 355 Mich. 363, 94 N. W. 2d 858, 862, where the Supreme Court of Michigan raised the question, "How much then is a man better than a sheep?"

There is a wide difference in the ultimate result where the issue is raised as to whether or not the driver has been guilty of reckless-ness or wanton misconduct. Where a driver operates his vehicle at an excessive speed of 80 miles per hour, such fact alone does not constitute wantonness and hence a guest passenger could not recover for ordinary negligence. (*Elliott v. Peters*, 163 Kan. 631, 185 P. 2d 139.) If, however, he drives at the same rate of speed on a slick pavement, in heavy traffic, and the passenger protests his driving then such driving might well be found to be reckless and wanton. (*Swinney v. Ward*, 187 Kan. 746, 360 P. 2d 193.) Unfor-tunately there is no clear distinction between recklessness and wantonness on the one hand and gross negligence on the other. The result has been that in comparable factual situations, one guest passenger has been denied recovery and another has been per-mitted to recover for his injuries.

From this analysis of our past decisions it seems obvious to us that the guest statute has had the effect of discriminating between automobile passengers under varying factual circumstances. Is there a rational basis for these distinctions? What legitimate public interest is served thereby?

Shortly after the enactment of the guest statute it was contended that the passage of the guest statute created a public policy in the state against the enforcement of the previously applicable common-law rule of liability. We rejected this contention in *Pool v. Day*, 141 Kan. 195, 40 P. 2d 396. In *Pool* two young couples from Cowley county decided to attend a dance at Ponca City, Oklahoma. En-route, an automobile accident occurred in Oklahoma. Oklahoma did not have a guest statute. A young girl, who was a guest passen-

ger injured in the accident, brought an action in the district court of Cowley county to recover against the estate of the negligent driver. The cause of action was based upon ordinary negligence, the common-law rule of liability recognized in Oklahoma. It was argued by the defendant that the common-law liability rule of Oklahoma was inconsistent with the Kansas guest statute and therefore enforcement of the common-law rule was against the public policy of this state. We held that the action was not in violation of any positive law of our state and did not contravene our public policy, nor offend our morals or threaten injury to any public rights or the interests of our citizens in any way, and was therefore a proper case to be brought in the district courts of this state.

The opinion in *Brown v. Merlo,* supra, points out that two justifications have traditionally been advanced in both judicial precedent and academic commentaries to support the guest statute's classification scheme. (See, *e. g.,* 2 Harper & James, Law of Torts [1956] § 16.15, p. 961; Lascher, *Hard Laws Makes Bad Cases—Lots of Them.* [The California Guest Statute], 9 Santa Clara Lawyer 1 [1969]; Joost, *The Automobile Guest Rule: Sound Public Policy or Legal Dinosaur,* 2 Portia L. J. 105 [1966]; Tanner, *The Kansas Guest Act: Let's Take Another Look,* 20 Kan. L. Rev. 283 [1972].) First, the provision is said to promote hospitality by insulating generous drivers from lawsuits instituted by ungrateful guests who have benefited from a free ride. This has been referred to as the "hospitality" argument. Second, it is suggested that the statute serves to eliminate the possibility of collusive lawsuits, in which a host fraudulently confesses negligence so as to permit his guest—presumably a friend or relative—to collect from the host's insurance company. These justifications are mentioned in our early decisions interpreting the guest statute. (*Stout v. Gallemore,* 138 Kan. 385, 26 P. 2d 573; *Koster v. Matson,* 139 Kan. 124, 30 P. 2d 107; and *Bedenbender v. Walls,* supra.) We agree with the Supreme Court of California in *Brown* that neither of these justifications provides a reasonable explanation for the discriminations established by the guest statute and thus neither provides a rational basis to uphold the statute against the present constitutional attack.

We will consider each of these justifications separately—first, the "hospitality" argument. We believe that the protection of hospitality does not provide a sufficient or rational basis for the guest statute's classifications. The opinion in *Brown* points out that the

"hospitality" rationale actually embodies two distinct strands of reasoning. In the first instance, the theory envisages the statute's classification scheme as simply providing a higher standard of care for passengers who pay than passengers who do not, justifying such a distinction as rationally reflective of a purportedly general legal principle that "you get what you pay for." In the second instance, the hospitality rationale deems the guest's suit against the host an inexcusable instance of ingratitude, and hence subject to legislative condemnation. The courts of this state have recognized the rationale of prescribing a higher degree of care for paying passengers than nonpaying ones; the common carrier's duty to use utmost care exemplifies this principle at work. We do not believe that this rationale can reasonably be applied as between nonpaying guests and paying passengers in private automobiles. The invidiousness of the guest statute lies not in the fact that it draws some distinction between paying and nonpaying passengers, but rather in the fact it penalizes guests by wholly depriving them of protection against negligent injury. Furthermore a higher standard of care has traditionally been placed upon common carriers because they operate in exclusive areas under certificates of convenience and necessity as public utilities. We do not believe that it is reasonable to compare the ordinary automobile driver to a public utility.

We furthermore reject the thesis that a guest passenger's lawsuit against his host constitutes the epitome of ingratitude and as such ought to be condemned. (*Bedenbender v. Walls*, supra.) This argument is not persuasive because widespread liability insurance has largely eliminated any notion of "ingratitude" that may once have adhered to a guest's suit against his host and also because the deprivation of a guest's redress for negligence cannot rationally be justified by a desire to promote hospitality. In considering the "hospitality" argument the Supreme Court of California in *Brown* stated as follows:

"First, if the characterization of an injured guest's lawsuit as an act of 'ingratitude' ever had general validity, its rationality has been completely eroded by the development of almost universal automobile liability insurance coverage in recent years. Whereas in the late 1920's and 1930's the statute's operation might realistically have been viewed as relieving most generous hosts from potentially great personal expense, today, with the widespread prevalence of insurance coverage, it is the insurance company, and not the generous host, that in the majority of instances wins protection under the guest statute. Thus, in a day in which nearly 85 percent of automobile drivers carry liability insurance, the statute can no longer sequester the defense that it is a

necessary means to thwart 'ungrateful' guests. In plain language, there is simply no notion of 'ingratitude' in suing your host's *insurer*." (p. 868.)

We believe that this reasoning of the California Supreme Court is especially applicable today in Kansas. The overwhelming majority of the automobile drivers in Kansas today have liability insurance. Furthermore the modern trend is to make mandatory insurance coverage for all owners of motor vehicles. This is one of the basic concepts of no fault legislation which has been enacted or is being considered in practically every state in the nation today. Hence it is clear to us that the "hospitality" argument first advanced in 1930, has no validity under the facts of life as they exist today. We further are impressed by the conclusion in *Brown* that the guest statute's purpose of fostering hospitality cannot rationally justify the lowering of protection for certain types of automobile passengers. That opinion discusses the matter in much depth and we refer the reader to that opinion. To sum it all up, we conclude that the "hospitality" justification does not constitute a rational ground for discriminating between paying and nonpaying automobile passengers nor for withdrawing a guest's right to recover for negligently inflicted injury.

We further hold that the "collusion prevention" justification does not provide a sufficient basis for the statute's wholesale elimination of all automobile guests' causes of action for negligently inflicted injuries. The theory behind the "collusion" argument appears to be that the driver who gives a free ride to a passenger does so because of a close relationship with his guest; because of the presumed closeness of this relationship, the driver may falsely admit liability so that his guest may collect from the driver's insurance company. To combat this risk of potential fraud, the guest statute eliminates all causes of action in negligence for automobile guests. We believe that it is unreasonable to eliminate causes of action of an entire class of persons simply because some undefined portion of the designated class may file fraudulent lawsuits. As stated in *Emery v. Emery*, 45 Cal. 2d 421, 289 P. 2d 218, "Courts must depend upon the efficiency of the judicial processes to ferret out the meritorious from the fraudulent in particular cases." In *Brown* the Supreme Court of California effectively refuted the "collusion" argument by pointing out that under the terms of the guest statute the rider and driver can escape the statute's bar and thwart the "anti-collusion" purpose, simply by colluding on the issue of whether

the rider provided any compensation or payment for the ride. By broadly prohibiting all automobile guests from instituting causes of action for negligence because a small segment of that class may file collusive suits, the guest statute creates an overinclusive classification scheme. It results in throwing out the baby simply because the bath water gets dirty once in awhile. The statutory scheme clearly imposes a burden upon a wider range of individuals than are included in the class of those tainted with the mischief at which the law aims. We believe that in barring suits for all automobile guests simply to protect insurance companies from some collusive lawsuits, the guest statute exceeds the bounds of rationality and constitutes a denial of equal protection of the law.

In summary, we conclude that the classifications which the guest statute creates between those denied and those permitted recovery for negligently inflicted injuries do not bear a substantial and rational relation to the statute's purposes of protecting the hospitality of the host driver and of preventing collusive lawsuits. We therefore hold that, as applied to a negligently injured guest, the Kansas guest statute violates the equal protection guarantees of the United States and Kansas Constitutions. We, of necessity, overrule *Bailey v. Resner,* supra; *Wright v. Pizel,* supra; and *Westover v. Schaffer,* supra, which upheld the guest statute's constitutionality on other grounds.

The judgment is reversed and the case is remanded to the district court with instructions to permit the plaintiff to proceed with her cause of action in negligence.

KAUL, J., (dissenting): Whether a Kansas motorist should be subjected to suit by gratuitous passengers, including members of his own family, for injuries caused by ordinary negligence is a sensitive policy question which has been repeatedly debated in the legislative halls of this state for many years. Although, as pointed out in the majority opinion, our Kansas guest statute has heretofore withstood many constitutional challenges, the court today has relied upon the constitutional principle of equal protection based upon the alleged unreasonable classification of gratuitous passengers · as espoused by the California court in *Brown v. Merlo,* 8 Cal. 3d 855, 506 P. 2d 212, 106 Cal. Rptr. 388, and judicially abolished the statute rather than waiting for the legislature to act.

The court has reasoned that the "hospitality" and "collusive lawsuits" arguments have been so eroded by changing conditions—

particularly expansion of liability insurance coverage—that they no longer serve as a reasonable basis for a gratuitous passenger classification. To the two justifications mentioned I would add the evils of vexatious litigation. (*Silver v. Silver,* 280 U. S. 117, 74 L. Ed. 221, 50 S. Ct. 57, 65 A. L. R. 939.)

Traditionally, this court as well as courts generally have afforded legislative classifications a presumption of reasonableness and constitutionality where discrimination is not based upon race, color, religion, ancestry or financial position. (*Allied Stores of Ohio v. Bowers,* 358 U. S. 522, 3 L. Ed. 2d 480, 79 S. Ct. 437; Vol. 1 Antieau, Modern Constitutional Law, § 8:81, p. 630.) A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. (*McGowan v. Maryland,* 366 U. S. 420, 6 L. Ed. 2d 393, 81 S. Ct. 1101.)

In many legislative enactments, a number of which have withstood constitutional challenges before this court, the use of an automobile on Kansas highways has been recognized as peculiarly the subject of regulation. Our guest statute (K. S. A. 8-122b) is incorporated in the regulatory provisions of the Automobiles And Other Motor Vehicles Act and is nothing more than an increment to the regulatory provisions contained therein.

On the basis of the record presented and information at hand I cannot assume that there are no evils to be corrected or permissible social objects to be gained by the statute. Nor am I able to agree that no state of facts could reasonably be conceived that would justify the classification set out by the statute.

Whether the concepts of hospitality, collusive lawsuits and vexatious litigation have been so eroded by changing conditions that they have become obliterated as justifications for the Act poses a question steeped with social implications and is much more appropriate for legislative solution than judicial determination. A legislative committee has much broader access to relevant information bearing upon these matters than that afforded a court bound by the limitations of a record of judicial proceedings. A bill (House Bill No. 1634) to repeal the statute is pending before the legislature now in session.

For the reasons stated I believe the legislature is the proper forum for determination of the issue and, therefore, respectfully dissent.

SCHROEDER and FROMME, JJ., join in the foregoing dissenting opinion.